STATE OF IOWA v. NICOLA PARTIPILO, Appellant.

**Assault with intent to murder:** SELF-DEFENSE: BURDEN OF PROOF: INSTRUCTIONS: PREJUDICE. The burden of proof is upon the State to show that a defendant charged with assault with intent to commit murder was not acting in self-defense by evidence sufficient to remove all reasonable doubt, and an instruction on the subject of self-defense which implies, or may be understood as implying, that a finding that defendant was properly acting in self-defense was necessary to an acquittal is erroneous; but if the proven facts and circumstances are such as to completely negative the claim of self-defense no prejudice can arise from the instruction. Evidence held insufficient to support a claim of self-defense.

*Appeal from Fayette District Court.*— HON. L. E. FELLOWS, Judge.

TUESDAY, JULY 7, 1908.

REHEARING DENIED, TUESDAY, SEPTEMBER 29, 1908.

DEFENDANT was convicted of an assault with intent to commit murder, and he appeals.— *Affirmed.*

*Tom. H. Milner,* for appellant.

*H. W. Byers,* Attorney General, and *C. W. Lyon,*
Assistant Attorney General, for the State.

BISHOP, J.— The alleged assault was by shooting with
a revolver. Defendant admitted the shooting, but claimed
that it was done in self-defense. No requests were made by
defendant for instructions. In the instructions, given by
the court on its own motion, the jury was not told in formal
phrase that the burden of proof was with the State. It was
said, however, that the defendant " is presumed to be inno-
cent until his guilt is established by sufficient legal evi-
dence." And again: " The degree of proof necessary to
justify a conviction  .  .  .  is such evidence as shall sat-
isfy you, beyond a reasonable doubt, of his guilt. Where
there is a reasonable doubt of the defendant being proven to
be guilty, he is entitled to an acquittal. Full and satisfac-
tory proof is required," etc. After defining the elements
essential to the crime charged, the jury was further told:
" And in this case, before you can convict the defendant
.  .  .  you must be satisfied from the evidence, beyond a
reasonable doubt, that the defendant did, with malice afore-
thought, assault Abbananti with the specific intent to kill
him," etc. In the eleventh instruction, after stating cor-
rectly the abstract rule of self-defense, the court continued
thus:  " If you find that, shortly before the shooting, there
had been an affray between the defendant and the person
injured, and that such affray had ceased, and the defendant
had gone away, then he had no right to return, either armed
with a revolver or otherwise, for the purpose of defending
himself against what had already occurred. Defendant can-
not justify himself on the ground of self-defense, unless he
was actually assaulted, after his return to the car, after going
away and obtaining a revolver. It is for you to decide from
the evidence whether or not he was assaulted after his return.

If he was not, then he was not acting in self-defense in doing the shooting. If you find from the evidence that he was at that time assaulted, then you must determine from the evidence whether the circumstances were such as would justify him in firing the shot that injured Abbananti. If, guided by this instruction, you find from the evidence that the defendant, at the time of the shooting, was properly acting in self-defense, then you should acquit him."

The demand for a reversal of the judgment is based on the failure of the court to properly instruct on the subject of burden of proof. And it is the argument that instruction 11 may very well have been understood by the jury as placing the burden of proving self-defense on the defendant; this especially as the last sentence of the instruction seems to make an acquittal depend upon an affirmative finding " that defendant, at the time of the shooting, was properly acting in self-defense." It is the rule in this jurisdiction that " the burden is on the State to show that the defendant was not acting in self-defense, and this it must do by evidence sufficiently strong to remove all reasonable doubt." *State v. Shea*, 104 Iowa, 724, and cases cited. Here the court conceived that self-defense was an issue in the case, and proceeded to instruct on the subject. It goes without saying that the law should have been fairly and correctly stated. The vice of the instruction assailed lies in the fact that it implies, or may be understood to imply, that a finding that defendant was properly acting in self-defense was necessary to his acquittal. Under the rule he was entitled to an acquittal if the State had failed to negative the claim of self-defense. And that is only another way of saying that, if the evidence addressed to self-defense was sufficient to give rise to a reasonable doubt of the defendant's guilt, he was entitled to an acquittal.

But the State insists that, conceding the error in the instruction, it was without prejudice. And the argument here is that there was no basis, in the evidence, to support

a finding of self-defense; hence an instruction on the subject was not called for, and the jury could not have been misled, to the prejudice of defendant, by any inaccuracy of statement in the instruction as given. With this contention we are quite disposed to agree. As we have seen, defendant admitted the shooting. Now, if the attending circumstances were such as to completely negative the claim that it was done in self-defense, then, plainly enough, no prejudice could arise from the fact that the rule respecting the burden of proof was either wholly omitted or inaccurately stated. If defendant was not entitled to an instruction on the subject, the giving of an erroneous instruction could have no other effect than to give him a chance for a favorable finding which should not have been accorded to him. A careful reading of the evidence convinces us that the shooting was wholly without justification. Defendant and Abbananti were members of a gang of men in the employ of a railway company as track workers, and were stationed, at the time, at Oelwein. They lived in box cars, and on the night in question all were gathered in the car occupied by Abbananti, engaged in playing cards. All had been drinking beer, and were more or less intoxicated. During the evening a dispute arose, and defendant was somewhat unceremoniously ejected from the car by Abbananti. According to his own statement, defendant went to his own car, where he remained a few minutes. He then started back for Abbananti's car, as he says, " to make friends with the men again." On the way he met one of the men, Nick Favio, who asked him where he was going, to which he replied that he was going back to make up with the boys in the car. He says: " Favio then says to me, ' Don't go there, because they are all drunk, and they are saying that they are going to kill you.' Then I turned around, and went back to my car and stayed there a while and took the revolver and put it in my pocket. Then I was going back to make friends." Several witnesses testify that, as defendant left his own car " to make friends," he declared

that "whoever steps in front of me I will shoot them," and of this defendant, as a witness, made no denial. Each of the witnesses who saw the shooting — and there was some ten of them — testify in positive terms that, as defendant came up to the side of Abbananti's car, and stepped upon the lower rung of the ladder leading up into the car, Abbananti came to the door, when, without a word of warning, defendant opened fire upon him with his revolver. One of the shots took effect. The bullet entered Abbananti's breast, and was afterwards extracted from under his right shoulder. Defendant says — and in this he stands alone — that when he approached the car, Abbananti and his brother sprang down to the ground and assaulted him, and that it was not until they had forced him to the ground, and were calling for an ax with which to kill him, that he drew his revolver and commenced shooting. In all of its material aspects this is the fact situation presented by the evidence. In it there was no room for a finding of self-defense. If that were all, it may be conceded that the question who was the aggressor in the affray was a proper one to go to the jury, notwithstanding the fact that defendant stood alone in his testimony as against the ten who united in a contrary version of the affair. But after defendant had been warned that the inmates of the Abbananti car were incensed against him, and were contemplating further violence to him, he armed himself with a revolver, and started for the car, with the declaration on his lips that he would shoot whoever might step in front of him. His voice then was for war, and no reasonable man could believe that, as he approached Abbananti's car, his heart was yearning for peace. Quite to the contrary, it is not possible in reason to conclude otherwise than that he was smarting from what he had conceived to be an indignity put upon him, and revenge, instead of peace, was in his heart. One who arms himself, and goes out to seek a quarrel under circumstances as here disclosed, cannot excuse a shooting as in self-defense. *State v. Stanley,* 33 Iowa, 526; *State v. Sullivan,*

51 Iowa, 142; *State v. Jones*, 89 Iowa, 182; *State v. Pierce*, 90 Iowa, 506.

No other matters of error are contended for in argument. Accordingly the judgment is *affirmed*.