STATE OF IOWA, Appellee, v. WILHELM SCHUMANN, Appellant.

**ASSAULT AND BATTERY:** Great Bodily Injury—Sufficiency of 1 Evidence. Evidence held sufficient to support a verdict of guilt of assault with intent to inflict great bodily injury with a brick, though no personal injury was inflicted.

**ASSAULT AND BATTERY:** Removal of Trespasser—Force Permit- 2 ted. Instructions relative to the degree of force permissible in order to remove a trespasser reviewed, and held amply suffi- cient to fully protect the defendant.

**APPEAL AND ERROR:** Harmless Error—Fact Otherwise Shown. 3 One may not complain of the exclusion of testimony tending to establish a fact fully shown by other and better testimony.

**CRIMINAL LAW:** Improper Questions. The mere asking of an 4 improper question does not constitute reversible error.

*Appeal from Greene District Court.*—M. E. HUTCHISON, Judge.

DECEMBER 16, 1919.

DEFENDANT was indicted by the grand jury of Calhoun County, charging him with the offense of assault with in- tent to inflict a great bodily injury. Upon application of the defendant, the cause was transferred to Greene Coun- ty, where a trial to a jury was had, and a verdict of guilty

of the crime charged was returned, and sentence and judg‧
ment pronounced.   The defendant appeals.—*Affirmed.*

*C. H. Van Law,* for appellant.

*H. M. Havner,* Attorney General, *J. L. Lavender* and *E. G. Graham,* County Attorneys, for appellee.

PRESTON, J.—The assault is alleged to have been made
with a brick thrown by the defendant at the complaining
witness, Wattonville, which did not hit the mark.   At the
time of the transaction in question, the de‧
fendant was pastor of the First Evangeli‧
cal Church of Pomeroy, Iowa.   The church
was then engaged in the construction of a
church building.   The construction work
was in charge of a building committee, of which defendant
was chairman.   Appellant contends that he was in charge
of the building, in the name of the building committee..
The evidence was such, however, that the court properly in‧
structed the jury that it was for them to determine whether
the defendant or the contractor was in the lawful custody
and control of the building, as it was then being construct‧
ed, and for them to decide which had the right to forbid the
entrance of the prosecuting witness, Wattonville, into the
church at the time in question.   The act complained of oc‧
curred about 10 o'clock in the morning of November 2, 1918.
The complainant and one Wygandt met on the street, and
one of them suggested that they go to the church that was
being built.   The church was located on a corner, at the in‧
tersection of two streets, and the two men went around to
the back of the church, and entered at a grade entrance,
which would take them into the basement.   They then went
up a flight of stairs, which would bring them to the main
auditorium.   As they entered, defendant was on a staging,
or scaffolding, from 6 to 10 feet high.   According to de-

1. ASSAULT AND
   BATTERY:
   great bodily
   injury: suffi-
   ciency of evi-
   dence.

fendant's testimony, Wattonville and Wygandt were about 12 or 14 feet distant from defendant, and had advanced a step or two into the auditorium at the time the brick was thrown. Other witnesses place them closer. According to some of defendant's witnesses, as Wattonville and Wygandt came up the stairs leading from the grade entrance, defendant told them not to come in, and to stay away; that he didn't want them there on the property. In the construction, some 2 x 4's had been placed; they were about 15 inches apart. The brick hit and dented a 2 x 4, 3 or 4 feet above the floor,—some of the witnesses put it more than that; others, less. Wattonville was standing on the other side of the studding from defendant. According to defendant's witnesses, the brick hit the studding a little to one side of Wattonville, and fell at the foot of the studding; and, after defendant threw the brick, Wattonville went out of the door. Defendant's evidence tends to show that Wattonville was standing about 4 feet from the studding; other witnesses put him closer. Defendant was standing some 4 or 5 feet higher than Wattonville. The testimony for the State is that, when defendant told Wattonville and Wygandt that he didn't want them there on their property, Wygandt said to Wattonville to look out, —that defendant was going to throw the brick; that Wattonville and Wygandt turned and started out the back way, the way they had entered. We shall set out a part of the testimony of an eyewitness, which indicates the tendency of the State's testimony. He says:

"I saw Mr. Wattonville's head just coming up through the stairs on the stairway, and Mr. Schumann was standing up on this runway, and Mr. Wattonville came in, up in the auditorium, and Mr. Schumann reached over on the floor that was right next to where he was standing, and picked up a brick. I didn't hear him say anything, but I saw him square to hit them,—throw at them; and the fellows turned

back to go away; and while they were turning back, and running, he threw at them. The brick did not hit Mr. Wattonville—it hit a 2 x 4. I examined the 2 x 4 afterwards. On the 2 x 4, about 3 or 4 feet off the floor, there was a big nick in the side of it. I did not see what became of the brick after it hit the 2 x 4.    *    *    *    At the time the brick was thrown, Mr. Wygandt was down farther on the stairway, pretty near to the door, I should judge. Mr. Wattonville was just going down stairs, and the stairs was just an ordinary stairs, and he had to be right up beside the 2 x 4, or else he couldn't have got down stairs. At the time the brick hit the 2 x 4, he was not over a foot away from it." ·

Another witness testifies that Wattonville was retreating, and had retreated when the brick was thrown. We do not deem it necessary to set out the evidence more in detail. There was such a dispute as to make a jury question as to the matters complained of, which will be referred to later.

1. It is contended by appellant that the evidence is insufficient to sustain the verdict, in that there is no proof of any specific intent upon the part of the defendant to inflict a great bodily injury. It is, of course, true, as contended by appellant, that it is necessary to a conviction that the intent, as well as the assault, must be established. This may be, and of necessity must be, in most cases, established circumstantially, and by legitimate inferences from the evidence. No injury was inflicted upon complainant by defendant; but that is not necessary, to constitute the offense. The intent to injure another by discharging a loaded gun at him would be at least an intent to inflict great bodily injury. *State v. Mitchell*, 139 Iowa, 455, 462. The intent might be to kill, of course; but, as said, in would be at least intended to inflict a great bodily injury. That a party's aim is not true does not change the intent, if it was the purpose and intent to injure. It has been held that a brick

is, or may be, a deadly weapon, when used in an assault. *State v. Sims,* 80 Miss. 381. A stone may be used in such a manner as to constitute a deadly weapon. *State v. Dineen,* 10 Minn. 407. There was an assault, and the jury was justified in finding from the evidence that the brick was thrown by the defendant at the complaining witness with the intention of hitting him; and, from the character of the instrument with which the assault was made, the force with which the brick was thrown, the distance the parties were apart, and the other circumstances shown, the jury may well have found that the intent of defendant was to inflict a great bodily injury. Such an injury may not be described with exactness, but it has been defined as an injury of a more serious and grave nature than an ordinary battery. *State v. Ockij,* 165 Iowa 237, 240. The court's instructions were in harmony with the definition given in the cases.

2. The fourth assignment of error is that there was error in giving Instruction No. 13, and refusing to give instructions covering the matters therein embraced by the request of defendant in requests 1, 2, 3, and

**2. ASSAULT AND BATTERY: removal of trespasser: force permitted.** 4. The brief point on this is that it is competent for the court to instruct the jury who holds the legal title of real estate when, from the evidence, the question is one of law, and that:

"In determining disputed questions of fact, juries may sometimes properly bring to their aid their acquaintance with matters of general and common knowledge; but it has never been held that they may be left without direction to make application of a rule of law, no matter how familiar it may be [citing cases]."

As before stated, the evidence was such that the court properly left it to the jury to determine who was in custody and control of the building. It was not a disputed

question of fact as to legal title, as were the cases cited by appellant. The court instructed the jury (after stating defendant's claim that the complaining witness, Wattonville, was a trespasser, and that the defendant, in doing that which he did, if anything, did no more than was reasonably necessary, under the circumstances, to eject Wattonville from the building) that, if the jury should find that the defendant was in the lawful custody and control of the building, and had the right to determine as to whether Wattonville should enter and be present in the building, and that defendant forbade Wattonville to enter the same, prior to the transaction in question, then the jury should determine from the evidence whether defendant exercised only that degree of force which was reasonably necessary and prudent to eject Wattonville from the church; and if, acting as a reasonably prudent person, under such circumstances, the defendant exercised only such degree of force as was reasonably necessary to eject him, then defendant would not be guilty. The converse of this proposition was given: that defendant would not be justified in resorting to more violent or harsh means than would be reasonably necessary under the circumstances, etc. In another instruction, of which no complaint is made, the jury was told, substantially, that a person has not the right to inflict upon another a great bodily injury, in order to prevent a mere trespass to property; but that, on the question of the claim of a trespass, if, on the whole case, the jury should have a reasonable doubt that the State had established defendant's guilt, he should be acquitted.

The defendant's requested instructions are on this subject, and were fairly covered by the court in the instructions given, except that the requested instructions state and assume that, as chairman of the building committee, defendant had authority to order the complaining witness from the premises. The jury could have found from the

evidence that defendant did have such authority, but they may well have found, also, that Wattonville was retreating, or leaving the premises, in compliance with the defendant's demand.

3. A witness for defendant was asked this question:

"Q. On or about the first of November, 1918, state to the jury whether or not Rev. Mr. Schumann saw you with reference to the matter of preventing Mr. Wattonville coming on the premises where there was being constructed this Evangelical Church in Pomeroy.

3. APPEAL AND ERROR: harmless error: fact otherwise shown.

"Mr. Graham: That is objected to as incompetent, irrelevant, and immaterial—doesn't prove or tend to prove any issues joined in this case.

"The Court: Are you going to connect this?

"Mr. Van Law: Your Honor, I can't connect it directly with Mr. Wattonville that he had the notice, but our offer of this witness is to show the attitude of Mr. Schumann on the matter of the presence of Mr. Wattonville on the property. I cannot say that this matter was called to the attention of Mr. Wattonville, further than to the attention of a member of his family: that he be told the request of Mr. Schumann to keep—for Mr. Wattonville to stay off. But it goes in this case: in the case it shows the mental attitude of Mr. Schumann; it shows his position in the matter, the standpoint from which he was acting with reference to the exclusion of Mr. Wattonville from these premises; and I think that is a very material feature of the question that is really at issue in this law suit. I would not say to the court that this witness will testify that he saw Mr. Wattonville, but he did see his wife, and imparted to her the request of Mr. Schumann.

"The Court: I don't think it is admissible. (To which ruling of the court the defendant duly excepts.)

"Mr. Van Law: Well, we make the offer of this testimony.

"The Court: All right, we will consider it as having been offered, along the lines that you suggest in your statement."

It is contended in argument that this evidence was offered, and was proper, as tending to establish the intent of the defendant to be other than that contended for by the State, and as charged in the indictment. Under the circumstances, we think the ruling was correct. It would have done no harm to have permitted an answer for the purpose indicated, but it appears that the same fact was shown more directly by other witnesses; that, prior to the day of the transaction in question, and on the morning of the transaction, prior to the assault, defendant had told Wattonville, in substance, not to come on the premises. There seems to be no dispute in the testimony as to this. Wattonville himself testifies that, the day before defendant threw the brick, defendant told him, "We don't want you on our property." This shows the defendant's mental attitude, and shows that Wattonville knew that defendant did not want him on the premises. It is contended by the State that, if this fact tended to prove anything with reference to the intent of defendant in throwing the brick, it would be to show that defendant had ill feeling towards Wattonville, and that his feeling was so bitter that he did not want Wattonville to even come upon the premises, and that it therefore tends to support the State's contention. If it be conceded that the ruling is erroneous, clearly there could be no prejudice.

4. In rebuttal, the prosecuting witness, Wattonville, was asked:

"Q. Had there been trouble between you and Wilhelm

Schumann prior to that time? A. Over

**4. CRIMINAL LAW: improper questions.** the espionage matter; yes, sir.

"Mr. Van Law: We move to strike the statement of the witness as a mere volunteer statement, incompetent, irrelevant, and immaterial.

"The Court: That will go out.

"Mr. Van Law: Now, you are asked a question, Mr. Witness, that you can answer 'yes' or 'no.'

"Q. Is this Wilhelm Schumann the same party whom you were instrumental in prosecuting for violation of the Espionage Act at Fort Dodge last June?

"Mr. Van Law: We object to this as incompetent, irrelevant, and immaterial; take exception to the asking of the question, the character of Wilhelm Schumann not being in issue in this case, and not proper rebuttal.

"The Court: You need not answer that question."

The first question would have been proper, though doubtless it should have been asked in chief, as tending to show ill feeling by defendant towards the party assaulted, or, if asked by defendant, to show the interest of the witness. No objection was made to that question. Indeed, counsel for defendant seemed to have thought the question was proper, because he himself instructed the witness to answer the question, "yes" or "no." The answer was promptly stricken, on motion of defendant. The only complaint is as to the asking of the one question thereafter. In one view, it might be thought that the question should not have been asked; but the prosecutor did not persist in such conduct. He promptly desisted, when the objection was sustained. It appears to have been a mere incident of the trial. On the other hand, the gist of the offense charged was the intent of defendant in throwing the brick, and the principal complaint of defendant here is that the evidence was not sufficient to show such intent. As bearing thereon, inquiry as to the previous relations between

prosecuting witness and defendant was pertinent. If they had had trouble before, the more serious the trouble, the deeper the feeling was likely to be. The answer stricken not only disclosed such trouble, but the serious character thereof. Such answer, however, was stricken; and, as this was error, we cannot well say that directing the attention thereto in the question should be regarded as prejudicial.

We reach the conclusion, on the whole case, that there is no prejudicial or reversible error. The judgment is, therefore,—*Affirmed.*

LADD, C. J., EVANS and STEVENS, JJ., concur.