STATE OF IOWA, Appellee, v. ELMER GARRISON DICKSON,
Appellant.

CRIMINAL LAW:  Former Jeopardy—Assault and Battery—Dismissal.
1  The dismissal of an information for assault and battery *"because a
graver offense than assault and battery had been committed"* does not
constitute a statutory bar to a later returned indictment for assault
with intent to inflict great bodily injury, based on the same trans-
action on which the charge of assault and battery was based.

CRIMINAL LAW:  Included Offenses—Duty to Exclude.  Under a
2  charge of assault with intent to inflict great bodily injury, the court
must not submit the included offenses of assault, and assault and
battery, when the record shows that, prior to return of the indict-
ment, the accused was formally charged with assault and battery,
and that the said charge was dismissed by the State, under Sec.
14027, Code of 1924.

ASSAULT AND BATTERY:  Assault With Intent to Inflict Great
3  Bodily Injury—Evidence—Sufficiency.  Evidence of an assault with
the fists reviewed, and held to sustain a verdict of guilty of assault
with intent to inflict great bodily injury.

CRIMINAL LAW:  Trial—Qualification of Juryman—Presumption of
4  Innocence.  A juryman, even though he has an erroneous concep-
tion of the presumption of innocence attending an accused person,
may, on being corrected in his impression, show such state of mind
as to justify the overruling of a challenge for cause.

CRIMINAL LAW:  Evidence—Conclusion of Witness.  Conclusion evi-
5  dence is permissible when the matter cannot otherwise be adequately
presented to the jury.

WITNESSES:  Impeachment—Remote Transactions.  Evidence of re-
6  mote transactions is inadmissible for the purpose of impeaching a
witness.

Headnote 1:  16 C. J. p. 276 (Anno.)  Headnote 2:  5 C. J. p. 800
(Anno.)  Headnote 3:  5 C. J. p. 791.  Headnote 4:  35 C. J. p. 356.
Headnote 5:  16 C. J. p. 748.  Headnote 6:  40 Cyc. p. 2597.

*Appeal from Davis District Court.*—E. S. WELLS, Judge.

FEBRUARY 17, 1925.

REHEARING DENIED MAY 15, 1925.

ON December 5, 1923, the grand jury of Davis County, Iowa, returned an indictment against the defendant Elmer Garrison Dickson, for the crime of assault with intent to inflict great bodily injury upon the person of one George Mack. A plea of not guilty was entered, and in addition thereto there was filed a special plea of former acquittal. Trial was had to a jury, and a verdict returned finding the defendant guilty of the crime as charged in the indictment. A motion for new trial was overruled, and on May 29, 1924, judgment was entered on the verdict, and the defendant was sentenced to imprisonment in the state penitentiary in conformity to statute. Defendant appeals.—*Judgment modified and cause affirmed.*

*Jo R. Jaques* and *Theodore P. Bence,* for appellant.

*Ben J. Gibson,* Attorney-general, *Buell McCash,* County Attorney, and *T. A. Goodson,* for appellee.

DE GRAFF, J.—Two formal pleas were entered by the defendant to the instant indictment, to wit: (1) not guilty; (2) former acquittal. The latter involves a proposition upon which

1. CRIMINAL LAW: former jeopardy: assault and battery: dismissal.

the defendant predicates reversible error, and is entitled to first consideration, as it is primary and controlling.

The record discloses that, on the same day that the defendant Dickson committed the assault giving rise to the indictment, a verified information based on the same transaction was filed by the county attorney of Davis County in the office of Justice of the Peace Baumgarten, in Bloomfield, Iowa, accusing the defendant of assault and battery. A warrant issued, an arrest was made, and bond given. On this date (November 17, 1923), with the consent of the defendant, trial was set for November 22, 1923. No plea to the charge of assault and battery was in fact entered by the defendant, and no trial was ever had. Two days subsequent to his arrest on the information, defendant filed his motion for change of venue, supported by affidavit of prejudice which, under the statute, entitled the defendant to such change. The justice on the same day sustained the motion; but, prior to the completion and transmission of the transcript to the next

nearest justice, the county attorney, on November 20, 1923, filed a written dismissal to the action, bottomed primarily on the ground, and as recited therein, that "a graver offense was committed than mere assault and battery, if the facts disclosed upon investigation are true, and that, therefore, the matter should be referred to the grand jury of Davis County, Iowa, for proper action in the premises." This motion was sustained; the information was dismissed; the defendant ordered discharged, and his bond released.

On December 5th, the instant indictment was returned. Question stated: Does the dismissal of the information in justice court, under this state of facts, constitute jeopardy and a bar to the further prosecution of the defendant for the major offense charged in the indictment, to wit, assault with intent to do great bodily injury? The proposition is interesting, and might well serve the basis for a discussion and citation of authorities. It is a question that has frequently been before the courts; but our prior decisions obviate the necessity for extended comment. Our statute in relation to dismissal of an information is as follows:

"The court, upon its own motion or the application of the county attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such a dismissal is a bar to another prosecution for the same offense if it is a misdemeanor; but it is not a bar if the offense charged be a felony." Section 14027, Code of 1924.

It is important to differentiate between the statutory bar as defined supra, and jeopardy within the purview of the constitutional definition, which reads:

"No person shall, after acquittal, be tried for the same offense." Article I, Section 12, Constitution of Iowa.

The statutory prohibition has no relevancy to the instant indictment, which involves a higher and different offense from that charged in the information. In the constitutional sense, there was no jeopardy, since there was no acquittal. In fact, there was no plea to the charge of assault and battery. To constitute jeopardy, the person must be placed on trial on a valid

indictment or information before a court of competent jurisdiction upon due arraignment and plea, and a jury must be impaneled and sworn. This is the general rule established by the preponderance of judicial opinion and accepted by the best considered decisions. 16 Corpus Juris, Section. 363. A mistrial does not constitute an acquittal. *State v. Parker,* 66 Iowa 586. See, also, *State v. Pierce,* 77 Iowa 245. There must be an acquittal in law and in fact.

Sufficient to state, however, that the legal principle here involved was determined by this court in the early case of *State v. Foster,* 33 Iowa 525, and reaffirmed in the late case of *State v. Garcia,* 198 Iowa 744. In the *Garcia* case, it is said:

"Where a court trying a defendant on a lesser charge would have no jurisdiction of a greater offense involving such charge, there can be no jeopardy."

In the *Foster* case, it is said:

"A conviction or acquittal, in order to be a bar to another prosecution, must be for the same offense, or for an offense of a higher degree, and necessarily including the offense for which the accused stands indicted."

As bearing further on the proposition, see *Scott v. United States,* 1 Morris 142; *State v. Gleason,* 56 Iowa 203; *Boswell v. State,* 20 Fla. 869.

The conclusion must be that the trial court properly withdrew the special plea of the defendant from the consideration of the jury. It may be further noted in this connection that the court instructed the jury that they should find the defendant either guilty of an assault with intent to inflict a great bodily injury, as charged in the indictment, or they should find him not guilty. This is correct. In no other manner could the court give effect to the statutory prohibition. It is obvious that, had the jury been permitted to return a verdict of assault, or assault and battery, and either had been returned, the court would have been under a legal duty to set aside the verdict. We discover no error in the instructions given.

2. CRIMINAL LAW:
included offenses:
duty to exclude.

We now turn to the complaint of appellant that the court was in error in overruling his motion for a directed verdict at the close of the State's evidence, and also at the conclusion of

**3. ASSAULT AND BATTERY: assault with intent to inflict great bodily injury: evidence: sufficiency.** all the testimony. This assigned proposition primarily involves the sufficiency of the evidence to sustain the verdict. In brief, the claim of appellant is that, taking into consideration the character of the assault and the injury inflicted, no graver offense than assault and battery was committed. The crime of assault to do great bodily injury is not susceptible of exact definition. The gist of the offense is the intent with which the act is done, and it is said in *State v. Steinke,* 185 Iowa 481:

"One may have the intent to inflict great bodily injury, without inflicting any injury at all; or he may intend only assault and battery, but go further than intended, and actually inflict a great bodily injury."

See, also, *State v. Mitchell,* 139 Iowa 455; *State v. Gillett,* 56 Iowa 459.

The evidence discloses that the defendant went to the office of the county auditor to investigate certain records with respect to the establishment of a road across his farm. During the conversation and the examination of the records, George Mack, a state highway engineer, came into the front room of the auditor's office. By reason of Mack's expert knowledge in the premises, the county auditor requested him to step into what is called the "engineer's cage." A dispute arose, relative to certain matters involving the presence of a corner stone, the width of the proposed road across defendant's farm, and the setting of certain stakes. At that time, what is known as Federal Aid Highway No. 153 was in process of construction. The jury could well find that, without apparent provocation, without any warning, and at a time when Mack's hands were in his pockets, the defendant struck Mack a very severe blow. This was followed by a second blow. The force of the assault split Mack's upper lip "open near the nose clear through. The teeth were showing between the gap in the wound." The attending physician further testified:

"He was bleeding profusely. I sewed his lip. The cut was almost from the nose to the mouth."

At the time the assault was made, other parties in the room interfered; and there was difficulty in restraining the defendant

from continuing the attack.   At this time, the defendant said:
"God damn him, let me at him.   I'll fix him."

No blow was struck by Mack.   He made no threat, and the
record discloses that he used no insulting word.   Some claim is
made by the defendant that he "believed" that Mack had a re-
volver.   No evidence supports this belief, and a positive denial
is made by Mack that he carried a revolver at that time or at
any time.   The fact that the defendant used simply his fists
does not *per se* define the limits of the assault.   *State v. Brackey,*
175 Iowa 599; *State v. Sayles,* 173 Iowa 374.   The jury was en-
titled to take into consideration the discrepancy in size of the
defendant and the person assaulted; what was said during the
altercation and immediately prior and subsequent thereto; and
the character of the injury inflicted.   These matters had a direct
bearing on the question of the intent, which is the essence of the
offense.   Clearly, a jury question was presented.

One assignment of error is based on the overruling of a chal-
lenge to a juror, Mrs. Dunfrund, for cause.   It does appear
that the juror entertained some false impressions relative to
the presumption of innocence which attends the
defendant upon indictment for crime.   The juror
had neither formed nor expressed any opinion
in regard to the guilt or innocence of the de-
fendant.   The testimony on *voir dire* is clear that she knew
nothing concerning the merits of the case, and she stated that
she had no bias, prejudice, or opinion of any kind concerning
the defendant.   The challenge, therefore, must be predicated
upon certain answers made by the juror on the examination by
defendant's attorney.   We are satisfied that, upon re-examina-
tion by counsel for the State, and the explanation of the matter
made by the court to the juror, any basis for the challenge was
removed.   She disclosed an open and fair mind, and said she
would follow the instructions given by the court.   In fact, she
stood corrected, and in effect admitted that she had a false im-
pression of the matter, developed by defendant's attorney.   A
trial court necessarily must exercise a judicial discretion in
questions of this character.   The fact of qualification of a juror
is for the trial court to decide in the first instance; and the mat-
ter must be determined, not only from the answers given, but

4. CRIMINAL LAW:
trial: qualifica-
tion of juryman:
presumption of
innocence.

by the demeanor of the juror and the attending circumstances. A clear abuse of discretion must be shown before an appellate court will interfere. *State v. Munchrath,* 78 Iowa 268. No prejudice is shown, and we will not presume prejudice.

Complaint is also made of certain rulings of the trial court on the admission of evidence. These assignments merit brief mention.

(1) The prosecuting witness, on direct examination, was asked this question:

"State, at the time Mr. Dickson hit you, as it appeared to you, what was his manner, as to whether or not he was angry, or whether or not he delivered a full, hard blow, with all the strength he had, as it appeared to you, or whether or not he gave you just a love tap,—a little slap that he was talking about."

The witness answered:

"It looked to me like he was starting in to finish something."

Defendant moved to strike this answer, on the ground that it was a conclusion on the part of the witness. The motion was overruled, and an exception taken. It is apparent that the witness was not asked to state his conclusion as to an actual state of facts, but only as it appeared to him. He was asked to describe his own mental reaction. Under the rule that a witness is competent to testify to his conclusion when the matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, the motion was properly overruled. *Yahn v. City of Ottumwa,* 60 Iowa 429.

5. CRIMINAL LAW: evidence: conclusion of witness.

(2) Clarence Johnson was called as a witness by the State. Upon cross-examination, he was asked if he knew that the highway in question never was 70 feet wide, and was never established at a time when the law made it 70 feet wide. The court sustained an objection on the ground of immateriality. As we understand the contention of appellant, its admissibility is based on the claim that it was pertinent to his theory of self-defense. We discover no such relevancy. Johnson's knowledge or ignorance of the width of the road would have no relation

to the fact as to whether the defendant was or was not the aggressor.

The same answer may be made to the claim of appellant that the court erred in sustaining objections to certain questions asked the defendant on direct examination, relative to the setting of stakes in marking out the highway, as shown by the plat; and also concerning certain difficulties he had in securing accommodations from the prosecuting witness and from other men in charge of the improvement. The acts under inquiry were all in the past tense, and clearly were not germane to any issue involved on the trial.

(3)   Upon cross-examination, a witness for the State, named Harridge, was asked how many times he had been convicted of bootlegging within the last ten years. An objection

6. WITNESSES:
impeachment:
remote transactions.

on the ground that it was immaterial, and not proper cross-examination, was sustained. Evidence of an impeachment character, as indicated by the question, must be confined to a period so recent that it would be likely to throw some light on the present character of the witness. *State v. Dillman,* 183 Iowa 1147. The witness was then asked if he had been convicted of selling intoxicating liquors contrary to law within the last five years, to which he answered that he was quite sure that he had not been so convicted. By further questioning, the defendant sought to prove by this witness that the latter had been handling and carrying intoxicating liquor around with him, and that he had it on the Dickson farm, giving it to men who were working there. At this point, the court advised the witness that he need not answer any question that might tend to incriminate him; and thereupon the witness exercised this right, and refused to make further answer. This was the privilege of the witness, and we discover no prejudicial error in the ruling of the court in this particular.

Other propositions of a minor character are presented and argued by appellant; but we deem it unnecessary to enter upon a discussion thereof. The matters contained in this opinion constitute the material and vital questions submitted on this appeal.

The defendant has had a fair and impartial trial. The jury determined the fact question, and we see no ground for

interfering with the verdict. However, the court is constrained to reduce the judgment entered, from one year in the penitentiary to nine months in the county jail of Davis County, Iowa. Under the provisions of Section 14010, Code of 1924, it is so ordered. With this modification of the judgment, the cause is—
*Affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, ARTHUR, and ALBERT, JJ., concur.

VERMILION, J., takes no part.