STATE OF IOWA, Appellee, v. WALTER DAVIS, Appellant.

No. 39813.

DECEMBER 13, 1929.

*H. R. Wright, C. C. Putnam,* and *Guy S. Calkins,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

MORLING, J.—I.   Defendant complains that the court should not have submitted to the jury the question of his guilt of murder in the first degree, for the reason that the indictment  does not charge that grade of offense, in that, as he contends, the indictment does not allege a specific intent to kill.   As the court submitted to the jury the question of defendant's guilt of murder in the first degree, and as the verdict found him guilty of murder in the second degree, defendant stood acquitted of the higher degree of crime charged, if it was charged, in the indictment.   *State v. Smith,* 132 Iowa 645.   As there must be a new trial on other grounds, and as the matter of guilt of murder in the first degree cannot, in any event, be again submitted to the jury, the error complained of, if any, is now without prejudice.

II.   The important question in the case, from defendant's standpoint, is whether the killing was in self-defense.   The homicide was committed in the home of the deceased, in the presence  of his wife, Lottie, and the daughter Fern.   Defendant was a visitor at that home.   At the time in question, a quarrel arose over the character of the daughter, which, according to the State's evidence, was started by defendant, and according to defendant's testimony, by the deceased.   Defendant's

claim was that deceased accused him of defaming the daughter. As defendant testifies:

"He says, 'Walter Davis, you dirty son of a bitch, if you say anything about her,'—and reached for his gun. I ran to the middle door, and Fern was in the middle door. * * * I tried to push her out, you see. To keep him from following, I just—boom, boom—but I didn't aim to kill him. I didn't aim to shoot him. * * * I shot when I was trying to get out."

Defendant's testimony is contradictory of self-defense, in that he says that he shot to scare deceased, had no intention to shoot him, was not shooting at him, was not scared. In other respects it is inconsistent with his claim of self-defense. The State introduced evidence of defendant's statement to the officers, after the killing, that he fired at deceased twice, and that he was doing it in protection of his own life, was scared. The court cannot say, as matter of law, that error in instructions on the law of self-defense was without prejudice. In instructing on this defense, the court charged:

"The defendant claims, at the time he shot John Washington, he was acting in self-defense. It is incumbent upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. * * * In so protecting his life or person from such an assault, he had the legal right to use all the force that is reasonably necessary to protect his own life and person, even to the extent of taking the life of his assailant, if it is necessary to take. the life of the assailant to prevent death or great bodily injury to himself. Four things are essential to the defense of self-defense, and before you can find that such defense has been established in this case, the presence of all four of these elements must appear in the evidence; and if any one of them does not appear, it is fatal to the defense of self-defense. First, the person claiming the defense of self-defense must be without fault in bringing on the encounter out of which the killing arose. No man can bring on an encounter and successfully plead necessity for taking human life. Where the defendant is the aggressor, and provokes an encounter, the right of self-defense does not exist, unless the defendant withdraws from the encounter, or, if unable to withdraw, notifies the other party to the en-

counter of his intention so to do, either by declaration or conduct. Second, the amount of force that may be used is only that which is reasonably necessary to prevent death or great bodily harm, either actual or apparent. * * * he is not to be held to any nice distinction as to the amount of force necessary, providing he does not willfully and purposely, and from a wrongful motive, use greater force than is necessary to protect his life or person. Third, the necessity and danger for killing the assailant need not be real, but in fact only apparent. * * * Fourth, the defendant must have retreated as far as he safely could, in order to avoid violence and necessity of taking life, and if he failed to so retreat as far as he safely could, the killing or taking the life of his assailant would not be justifiable killing, and would not be in self-defense. You must at all times keep in mind that no duty whatever rests upon the defendant to establish his defense of self-defense, but, as hereinbefore stated in this instruction, it is incumbent upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. If * * * you have * * * such reasonable doubt as to whether the defendant was acting in self-defense, in doing what the evidence may show he did do, he is entitled to the benefit of such doubt, and must be acquitted.''

We are of the opinion that these instructions are confusing and misleading. While the court properly told the jury (*State v. Yates,* 132 Iowa 475), that it was for the State to prove that the defendant did not act in self-defense, and that no duty to establish self-defense was upon defendant, yet he also said:

''Four things are essential to the defense of self-defense, and before you can find that such defense has been established in this case, the presence of all four of these elements must appear in the evidence; and if any one of them does not appear, it is fatal to the defense of self-defense.''

The instruction then proceeds that the person claiming the defense ''must be without fault in bringing on the encounter;'' that ''defendant must have retreated as far as he safely could, * * * and if he failed to so retreat, * * * the killing * * * would not be justifiable.'' We think the jury might understand from these specific declarations by the court, notwithstanding

correct general propositions on the burden of proof and reasonable doubt, that, before they could allow the defense, four essential elements must affirmatively appear. An instruction implying that it was necessary for the jury to find that defendant was acting in self-defense is error. *State v. Partipilo,* 139 Iowa 474. While such an instruction may be without prejudice if the facts completely negative the defense (idem), in this case the court does not feel warranted in holding, as matter of law, that there is such negation. The instructions were at least conflicting, and we think misleading.

Except that, in an interim in his visit at the house of deceased, when he and deceased went out to interview a neighbor, defendant says he got his gun, there is no evidence tending to show that defendant provoked the quarrel for the purpose of bringing on an opportunity to commit the homicide. The provocation of the quarrel appears to have been defendant's alleged defamation of the daughter. Defamation or opprobrious epithets not uttered for the purpose of bringing about opportunity to kill or do great bodily harm do not constitute such an act of aggression or provocation as to deprive the defendant of the right to claim self-defense. *State v. Leuhrsman,* 123 Iowa 476; 30 Corpus Juris 47. The jury might reasonably infer from the instructions that the alleged defamation of the daughter made defendant the aggressor, and provoked the encounter, and for that reason defendant was not acting in self-defense.

The jury were told that the amount of force which might be used was only that which was reasonably necessary, and also that defendant must have retreated as far as he safely could, and if he failed to so retreat, the killing would not be justifiable. In these instructions the court left out, we think, from the jury's consideration the element that the defendant was entitled to the benefit of conditions as they might reasonably have appeared to him as a reasonably careful and prudent person. Defendant was held responsible for using greater force than necessary, though the force that he used might reasonably have appeared to him, as a reasonably prudent person, to be necessary. The defendant was, by the instructions, required to retreat as far as he safely could,—that is, as far as, looking at the occurrence in the light in which it appeared to the jury, he might in fact have safely retreated, though, as conditions then appeared to defendant, he

could not have retreated safely. Defendant was entitled to act on conditions as they honestly appeared to him at the time, as a reasonable person. *State v. Brooks,* 192 Iowa 1107. Defendant, according to his testimony, at the time of the shooting was at the home of deceased by invitation. He was not there wrongfully. He claims the full benefit of his testimony that deceased "reached for his gun." The ancient doctrine developed out of encounters in which firearms were not so frequently drawn, and in which there would be in the appearances at the time an opportunity to retreat. That the defendant setting up self-defense must have retreated is no longer unqualifiedly the law. *State v. Sipes,* 202 Iowa 173; *State v. Borwick,* 193 Iowa 639; *State v. Gough,* 187 Iowa 363; *State v. Leeper,* 199 Iowa 432. As said in *Brown v. United States,* 256 U. S. 335, 343:

"* * * the failure to retreat is a circumstance to be considered with all the others, in order to determine whether the defendant went farther than he was justified in doing; not a categorical proof of guilt. The law has grown, and even if historical mistakes have contributed to its growth, it has tended in the direction of rules consistent with human nature."

The instruction allows the jury to find that the defendant, on the facts as they were proved at the trial, including evidence that deceased did not in fact have a gun, could safely have retreated, and was required to retreat, although they might find, as defendant testified, that deceased "reached for his gun," and defendant tried to get out, and was blocked by Fern, sitting in the door. Defendant's duty as to retreating was determined by conditions as they appeared to him as a reasonable man at the time, not by conditions as they might afterwards be proven actually to have been. In part, and with reference to some of the elements of self-defense, the court told the jury that defendant might act on conditions as they might have appeared to a reasonably prudent person, though mistaken as to the reality; but this qualification, like that concerning the burden of proof, was not consistently maintained.—*Reversed.*

ALBERT, C. J., and EVANS, WAGNER, and GRIMM, JJ., concur.

DE GRAFF, FAVILLE, and KINDIG, JJ., dissent.

DE GRAFF, J. (dissenting).—I respectfully dissent to the second division of the majority opinion, which has to do with the doctrine of self-defense, as defined in the instructions given by the trial court. The intent and content of the second division aforesaid are that the instructions are misleading, and that the jury might have considered that the burden of proof was upon the defendant to establish the defense upon which he relied, to wit, self-defense. I do not view the instructions as confusing or misleading. In a most explicit instruction, not only once, but twice, did the trial court expressly tell the jury (Instruction No. 12):

"It is incumbent upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense."

Then, after stating the four things essential to the defense of self-defense, he said:

"You must at all times keep in mind that no duty whatever rests upon the defendant to establish his defense of self-defense, but, as hereinbefore stated in this instruction, it is incumbent upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense."

In stating the "four things" essential to the doctrine of self-defense, the court was simply trying to explain what that doctrine means under judicial interpretation, not only of this court, but of the majority of the courts of last resort of these United States. Was the jury not entitled to have a matter of this kind explained so that it could intelligently apply the evidence? There was no thought on the part of the trial court, nor is there any language in the instructions, that put the burden upon the defendant. We must presume that the jury, as a composite body, was composed of men and women of average intelligence, and this court has more than once used this language in judicial opinion. The jury, acting with this average intelligence, which we assume they had, must be presumed, after a clear, explicit, and correct statement of the law by the trial court, to have understood the court's English, that, while considering said "four things," "you must at all times keep in mind that no duty whatever rests upon the defendant to establish his defense of self-defense, but it is incumbent upon the State to

prove beyond a reasonable doubt that the defendant did not act in self-defense.'': That is the dominant thought in this case. It is not misleading in any way. It is the law. Surely the jury was entitled to know the meaning of the term "self-defense," and this was the sole purpose of the trial court in explaining as it did the four essential things. The discussion as contained in the majority opinion is purely a technicality, and it is not our function to assume that the jury did not understand plain English.

In *State v. Partipilo,* 139 Iowa 474 (cited in the major opinion), the defendant was convicted of an assault with intent to commit murder, and the cause was affirmed on appeal. In that case the defendant admitted the shooting, but claimed that it was done in self-defense. It is said in opinion (l. c. 475):

"In the instructions, given by the court on its own motion, the jury was not told in formal phrase that the burden of proof was with the State."

This is quite different from the case at bar. In the *Partipilo* case, supra, the demand of the appellant for a reversal of the judgment is based upon the failure of the court to properly instruct on the burden of proof; and it was the contention of appellant in argument that a certain instruction (No. 11) "may very well have been understood by the jury as placing the burden of proving self-defense on the defendant." That case reaffirms the correct rule in this jurisdiction that:

" '* * * the burden is on the State to show that the defendant was not acting in self-defense, and this it must do by evidence sufficiently strong to remove all reasonable doubt.' "

It is further said:

"Under the rule, he [defendant] was entitled to an acquittal if the State had failed to negative the claim of self-defense. And that is only another way of saying that, if the evidence addressed to self-defense was sufficient to give rise to a reasonable doubt of the defendant's guilt, he was entitled to an acquittal."

The facts in the foregoing case are not analogous to the facts in the instant case, and the doctrine of self-defense is, in reality, not involved in the *Partipilo* case, as the court held that the attending circumstances were such as to completely negative

the claim of the appellant that the act was done in self-defense. It would have made no difference, and this court so held in the *Partipilo* case, whether an instruction on self-defense was given correctly or wholly omitted.

It is also stated in the majority opinion that there was error in the instruction on the failure of the trial court to instruct "that the defendant was entitled to the benefit of conditions as they might reasonably have appeared to him, as a reasonably careful and prudent person." In my judgment, the court did so instruct. The instruction speaks for itself:

"Second, the amount of force that may be used is only that which is reasonably necessary to prevent death or great bodily harm, either actual or apparent."

Again, the trial court instructed that a person, when assaulted, if he acts in good faith, "is not to be held to any nice distinction as to the amount of force necessary, providing he does not willfully and purposely, and from a wrongful motive, use greater force than is necessary to protect his life or person. In this respect, the rule is that, if the defendant, acting as a reasonably prudent person, has reason to believe, and does believe, that he is in fact in danger of death or great bodily harm, even though he may be mistaken as to the reality of such danger, if he acts as a reasonably prudent person, he is entitled to act upon such appearance and belief; and the killing of his assailant, under such circumstances, would be justifiable, though the danger and necessity for killing his assailant were in fact only apparent, and not real." How can the appellant complain of such an instruction? It is most favorable to him, and no prejudice can possibly be predicated thereon. It is also the law, and the jury could not have misunderstood such plain English.

The appellant, Davis, testified that the decedent, John Washington, after calling Davis a vile name, "reached for his gun," and that he (defendant) tried to get out of the room, but was blocked by Fern Washington, daughter of the deceased, who happened to be in his way. This presented simply a fact question for the jury to determine, in the light of the instructions given by the trial court on the doctrine of self-defense. There arises no inference or implication, in reading the instructions as a whole, that any burden rested upon the defendant to prove his

plea of self-defense. This is especially true for the reason that the court instructed the jury correctly, and by reiteration emphasized the thought that the burden was upon the State, at all times and under all the circumstances as disclosed by the evidence, ''to prove beyond a reasonable doubt that the defendant did not act in self-defense.''

I would affirm.

FAVILLE and KINDIG, JJ., join in this dissent.