Frank Tharp, Appellant, v. Arthur Rees, Appellee.

No. 44096.

February 15, 1938.

H. E. DeReus, L. S. Forrest, Chas. L. Brockett, and A. E. Mahan, for appellant.

Johnson & Johnson, for appellee.

ANDERSON, J.—The accident out of which this controversy arises occurred on the second day of May, 1936, on primary highway No. 60 near the south corporate limits of the town of Pleasantville, Iowa. The plaintiff was proceeding south, driving his automobile with one lady in the front seat with him and two ladies in the rear seat. He claims he was driving ten or fifteen miles an hour and on the right-hand or west side of the pavement, although the evidence shows that he was driving much faster than that; the testimony varying from twenty-five to sixty miles an hour. The defendant, Rees, was traveling north on his right-hand or the east side of the pavement at between ten and fifteen miles an hour. The cars of plaintiff and defendant came into collision some distance south of an intersection of a graveled county road and the primary highway No. 60; and the plaintiff was quite severely injured and his automobile damaged. He brings this action and, in his petition as shown by the abstract, bases his right to recover upon five specific grounds of negligence: (1) The defendant attempted to cross the highway and make a left turn about seventy-two feet before he reached the center of the intersection. (2) The defendant was not keeping a lookout. (3) The defendant drove his car across the line in the center of the highway and upon the west half of the highway without warning. (4) Defendant was driving his automobile at an excessive rate of speed and could not bring it to a stop within the assured clear distance. (5) The defendant did not have his automobile under control and did not reduce his speed to a reasonable rate. The defendant answered the claim of plaintiff by a general denial and also a counterclaim, alleging several grounds of negligence on the part of the plaintiff and that such negligence was the direct, sole, and proximate cause of the accident, and that defendant was damaged in the sum of $200. The cause was submitted to the jury by the court only upon the above-mentioned third ground of negligence, that is, "The defendant drove his car across the line in the center of the highway and upon the west half of the said highway without warning." The jury re-

turned a verdict for the defendant upon which judgment was entered dismissing plaintiff's petition. The plaintiff has appealed.

■■■ Appellant complains that the court erred in not submitting alleged grounds of negligence other than ground No. 3, above quoted, but we can see no merit in appellant's contention. The cars of appellant and appellee were approaching each other on a paved highway. There were no distracting circumstances and each could see plainly the approaching automobile of the other. One of these cars must have necessarily abandoned its own right half of the pavement and proceeded upon the other or left half, else the collision could not have occurred. There was no evidence to support the submission to the jury of the alleged ground of negligence No. 2 to the effect that defendant was not keeping a proper lookout. The defendant admitted that he saw the plaintiff's car approaching him, and the plaintiff concedes the same thing when he contends that the defendant did not bring his car to a stop or under control when he saw the plaintiff approaching him from the north. Likewise, there was no evidence to warrant the submission of ground of negligence No. 4—that is, that defendant was driving at a greater speed than would permit him to stop within the assured clear distance ahead. The evidence shows without question that the defendant was driving his automobile not to exceed fifteen miles per hour, and in proceeding at such a speed it cannot be said that the defendant could not stop his car within the assured clear distance on account of excessive speed, and neither can it be said that the defendant did not have his automobile under control as alleged in ground No. 5 of alleged negligence. In ground No. 1 of alleged negligence the plaintiff contends that the defendant attempted to cross the highway and make a left turn before he reached the center of the intersection. The evidence shows that the graveled road at the intersection was about twenty or twenty-five feet in width and that the accident occurred about seventy feet south of the center of the intersection, or more than sixty feet south of the south line of the intersecting graveled road. There is no evidence upon which to submit ground No. 1 of alleged negligence, and we are abidingly of the opinion that the submission of ground No. 3, quoted above, was the only ground of negligence which, under this record, the court was warranted in submitting to the jury.

We have carefully read all of the court's instructions to the jury, including instruction No. 10, which is especially criticized by the appellant. Instruction No. 10 submitted and defined the question as to contributory negligence of the plaintiff which would prevent his recovery. The instruction complained of is not subject to the attack made upon it by the appellant, and it ·clearly defined and submitted to the jury the question of contributory negligence, and we find no error in this or other of the instructions. It appears that the instructions were carefully prepared by the trial court and that they fully and fairly submitted to the jury all of the issues proper to be submitted to and determined by the jury.

 The appellant complains that there was misconduct of the jury sufficient to warrant the setting aside of the verdict and granting a new trial. The first of defendant's contentions in this regard has to do with the juror Wayne Hodgson. It appears that in the examination of this juror he stated that he was a neighbor of the defendant, Rees, friendly with him, and that it would be embarrassing for him to remain on the jury, but in answer to a question he stated that he could lay aside his embarrassment and try the case upon the evidence and the court's instructions and render a fair and impartial verdict. A challenge for cause was interposed by the plaintiff and overruled by the court, and we think properly so. In the first place the plaintiff failed to make any record as to the examination of this juror, and, secondly, it does not appear in the record that plaintiff exhausted all of his peremptory challenges and strikes before the jury were sworn. It does show that several of the peremptory challenges and all of the strikes were exercised after this juror's examination, and the juror's examination did not disclose any grounds disqualifying him to sit as a juror or that would subject him to challenge for cause. State v. Reed, 205 Iowa 858, 216 N. W. 759; Moore v. Fryman, 154 Iowa 534, 134 N. W. 534; State v. Wheelock, 218 Iowa 178, 254 N. W. 313; State v. Dickson, 200 Iowa 17, 202 N. W. 225; Harris v. Moore, 134 Iowa 704, 112 N. W. 163.

 Complaint is also made against this juror because he stopped at the place of the accident during the trial of the case, but the record shows that he stopped at an oil station on his way home from the place of trial in order to get some gasoline, and that the oil station was near where the accident occurred, but

there is no evidence that the juror told any of the other jurors anything that he saw at the place of the accident other than that a photograph introduced by the plaintiff looked about like plaintiff's car looked after the accident.

Testimony was taken of several of the jurors upon the submission of the motion for a new trial and it was sought to show, and appellant now contends, that this juror Hodgson acted as an attorney for the defendant in the jury room. This contention is somewhat ludicrous when you read the record made upon the submission of the motion for new trial. It shows that immediately upon retiring, and before any argument or discussion, the jury voted seven for the defendant and five for the plaintiff, and that one Shakel, who was foreman of the jury, was the loudest and most persistent advocate for either party that there was in the jury room. The record shows from his own testimony that he, with one other, was the last of the jurors to vote for the verdict for the defendant, and that he had voted both ways during the deliberations of the jury in an attempt to get them together. The record shows nothing unusual in the conduct of this jury during its deliberations. Juries usually take sides and contend and argue with each other as soon as they reach the jury room. And sometimes such discussion reaches a high state of enthusiasm and persistency, but we should not set a precedent that would warrant the granting of a new trial upon any such trivial matters as were argued by the jury in this case in its deliberations, and if we did so it would be a rare case in which the verdict of a jury could not be impeached.

There is also complaint made by the appellant that there was an extended discussion in the jury room as to the question of liability insurance which might or might not be carried by either the plaintiff or defendant. This discussion no doubt was induced by the examination of the jurors preliminary to their selection. This examination conducted by appellant's counsel asked each juror as to whether they were stockholders in any insurance company, and this examination was carried to quite an extent; the appellant's counsel apparently trying in every conceivable way to inject the insurance question into the trial. At any rate, we conclude that no prejudice resulted from the discussion in the jury room as to the question of liability insurance. The jury seemed to have acquired the idea that counsel for appellant represented insurance companies. Such is the

purport of the testimony of jurors Shakel and Stephens at the hearing on the motion for a new trial. Each of these juror witnesses said that they thought the defendant had insurance. Anyhow, we can see no prejudice resulting from any of the discussions in the jury room as to this question of insurance.

■■■ There is one further complaint which appellant claims constitutes misconduct and that is, that some seven or eight hours after the jury had retired they reported to the bailiff, directing him to tell the court that the jury had agreed to disagree. The court advised the bailiff to tell the jury they could not return any such verdict, and it appears that the bailiff reported to the jury what the court had told him and added that the jury might be kept there thirty days before that kind of a verdict would be accepted. This report excited loud laughter in the jury room, and most of the jurors said that they considered the matter as a joke and that it had no influence in their final agreement to return a verdict for the defendant.

We can see no prejudice whatever resulting to the appellant in any of the occurrences detailed. The record indicates that the disputed questions of fact were properly submitted to the jury and were determined by it adversely to the contentions of appellant. The verdict as returned has ample support in the record. In fact, the record could not be held to warrant or sustain any other finding by the jury. Finding no error it necessarily follows that the case must be and it is affirmed.—Affirmed.

STIGER, C. J., and MITCHELL, DONEGAN, KINTZINGER, and RICHARDS, JJ., concur.