STATE OF IOWA, appellee, v. BESSIE MOON, appellant.

### No. 47624.

(Reported in 44 N.W.2d 739)

NOVEMBER 14, 1950.

Raymond E. Hanke, of Des Moines, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Edwin S. Thayer, County Attorney, for appellee.

BLISS, J.—The assault charged was against Delbert Stewart, eighty-three, husband of Esther Stewart, sixty-five, a sister of defendant, sixty-one, all of whom lived in a small residence in Des Moines, the title to which was in the defendant and Mrs. Stewart, as joint tenants with title to vest in the surviving grantee. Defendant lived in two rooms separated by a hall from the three rooms occupied by the Stewarts. There was a bath and toilet room used in common. Their relations and association were not pleasant and, according to defendant, were aggravated by a third sister, Mable Orr, fifty-nine. There was a telephone in the quarters of each, on a party line, and the listening-in on the telephone conversations of the other was mutual.

On January 29, 1949, Bessie heard Mable advising Esther, over the telephone, to watch out for her stuff or Bessie would steal everything she could get her hands on. Defendant testified that immediately after this conversation she went into the Stewart quarters and told them she was going to remove her things which they were using. This she proceeded to do by dismantling a bed, removing the drawers in a chest, and rolling up a rug. During this disturbance, Esther, who is frail and arthritic and weighs but ninety pounds, went to the floor. Mr. Stewart testified she was felled by a blow from the fist of Bessie, who denied this and testified she may have jostled her, or she tripped. Esther's hip was broken.

Defendant testified that she then went to her rooms and opened a can of beans and cut a slice of bread with a butcher

knife and was having her lunch when she answered a telephone call; during her telephone talk, Delbert Stewart entered her rooms through one door and began picking dishes off the table and striking her with them; at the same time Mable entered from another door and began beating her with the handle end of a mopstick. She testified that she defended herself, and as they were hitting her, Mable grabbed the butcher knife off the table, and she said to her, "Mable, you'll cut your self," and Mable said, "I've already done it." Defendant further testified: "Then Del was still hitting me and she was hitting me, and then I had to hit him to knock him away. Q. How did you hit him? A. With my right arm—hand. Q. Did you have your fist doubled up? A. I couldn't tell you that. He was hitting me so hard with them dishes on my head. Q. What happened when you hit him? A. He was clear over there in the southwest corner lying there with the knife in his hand." After Mable had gone to call the police and to have the cuts on her fingers dressed, she testified that she asked Delbert for the knife, and he said: " 'You won't hurt me?' " and she said, "No." Then she took the knife from him and said: "Give me your hand," and she pulled him up.

Mrs. Orr and Mr. Stewart testified to their version of what took place, in substance, as follows: They were standing the rolled-up carpet in a corner of the hall when defendant came out of her rooms hurriedly toward them with her right arm upraised grasping a butcher knife in her hand with the blade pointed downward, saying to Stewart: " 'You old — — — —, I'll kill you. I'll run this knife clear through you' "; that Mrs. Orr grabbed defendant's right wrist and in the scuffle for the knife, defendant struck Stewart with her left hand and knocked him on his back and fell on top of him on her knees; that her (Mrs. Orr) hand slipped down on the blade and cut her fingers, and Bessie stopped the scuffle and the knife fell on the floor.

The court in its instructions told the jury with respect to the included offense of assault and battery that the burden was on the State to establish beyond a reasonable doubt that defendant committed said included offense, *and that said assault was not made by the defendant in self-defense.* (Italics ours.)

In the instruction on the included offense of assault with intent to commit great bodily injury, the court did not include the words italicized above.

The court instructed the jury that: "By great bodily injury is meant an injury to the person greater than that which ordinarily results from a simple altercation between parties with the fists or the like * * *."

I. Defendant assigns error in the giving of the instruction set out just above, in that the definition given of great bodily injury is not correct and does not meet the definition thereof stated in State v. Crandall, 227 Iowa 311, 315, 316, 288 N.W. 85, 88. In the cited case, we said:

"The defendant was charged with the crime of assault with intent to inflict great bodily injury. This is a crime which is not susceptible of exact definition. It is also difficult to define with exactness or definite limitations just what a great bodily injury is. We have said at different times that it is an injury to the person of a more grave and serious character than an ordinary battery, but that it cannot be definitely defined. State v. Gillett, 56 Iowa 459, 9 N.W. 362; State v. Ockij, 165 Iowa 237, 145 N.W. 486; State v. Schumann, 187 Iowa 1212, 175 N.W. 75; State v. Dickson, 200 Iowa 17, 202 N.W. 225; State v. Grimm, 206 Iowa 1178, 221 N.W. 804. It is not necessary, in fact, that there be any injury inflicted, as where one attempts to inflict the injury, but fails. State v. Shaver, 197 Iowa 1028, 198 N.W. 329; State v. Steinke, 185 Iowa 481, 170 N.W. 801. While the extent of the injury may be taken into consideration as bearing upon the intent, it is not, in itself, determinative of that intent. State v. Grimm, supra. The gist, or the foundation of the offense, as this court has repeatedly held, is the intent with which the injury is inflicted, or attempted. State v. Malcolm, 8 Iowa 413, 415; State v. Parker, 66 Iowa 586, 589, 24 N.W. 225, and cases cited above [quoted in State v. Van, 232 Iowa 34, 37, 2 N.W.2d 748]."

We find no merit in this assigned error. The definition of a great bodily injury, as contemplated in the crime charged and as given in the court's instruction, substantially complies with

1236

the definition in State v. Crandall, supra, and the decisions cited therein.

■ II. Defendant assigns error because the court failed to instruct on self-defense in its instruction on the included offense of assault with intent to commit great bodily injury. This assignment is not good. There was no issue of self-defense to that particular charge. The only basis for the charge against defendant of the crime of assault with intent to commit great bodily injury was the evidence that she advanced upon Stewart with an upraised butcher knife saying as she did that she would run it clear through him and kill him. She denied that she ever so did or said. She denied that she ever had the butcher knife in her hands either in attack or defense. There is no evidence in the record that defendant did anything more in self-defense than to hit Stewart with her hand. She did not know whether her hand was open or closed. She did not hit him with intent to do great bodily injury, but, as she said, "I had to hit him to knock him away."

The following of our decisions support the court's instruction in the matter complained of: State v. Yates, 132 Iowa 475, 479, 480, 109 N.W. 1005; State v. Partipilo, 139 Iowa 474, 476–478, 116 N.W. 1049; State v. Kilduff, 160 Iowa 388, 397, 141 N.W. 962; State v. Russo, 193 Iowa 992, 999, 188 N.W. 660; State v. Johnson, 211 Iowa 874, 875, 234 N.W. 263.

The judgment of the district court is—Affirmed.

All JUSTICES concur except JUSTICE HALE, not sitting.