George J. Stiefel, appellee, v. Alvin Wandro, appellant.

No. 48598.

(Reported in 68 N.W.2d 53)

January 12, 1955.

Rehearing Denied March 11, 1955.

Donohue & Wilkins, of New Hampton, for appellant.

Reed & Beers and R. Bruce Hughes, all of Waterloo, and R. J. Sullivan, of New Hampton, for appellee.

Wennerstrum, C. J.—Plaintiff, George Stiefel, brought suit against the defendant, Alvin Wandro, for damages sustained when struck by defendant's automobile as he, the plaintiff, claims he was alighting from a caterpillar tractor. The case was submitted to the jury which returned a verdict against the defendant in the amount of $18,500. The injuries sustained by the plaintiff consisted of the fracture of the tibia and fibula of his left limb. Subsequent to the verdict as returned the defendant filed a motion for judgment notwithstanding the verdict and later a motion for new trial. These motions were overruled and the defendant has appealed.

The accident which resulted in the plaintiff's injuries occurred on September 10, 1951, at about four o'clock in the afternoon. Immediately prior to this time the plaintiff had been operating a caterpillar tractor which was pulling a threshing machine separator on a north-and-south gravel surfaced county road approximately 25 feet in width. The tractor unit was five feet nine inches in width and was eleven feet in length. The separator was approximately 27 feet in length and seven feet four inches in width and about 14 feet high. The tractor was joined to the threshing machine by what is termed a hitch, and

which extended approximately six to eight feet in front of the separator. The entire unit, tractor, hitch and separator, was approximately 44 to 46 feet in length.

It had been raining for a short time prior to the accident. The plaintiff had reached a point referred to in the record as the Wright farm buildings and driveway. They were located on the west side of the north-and-south road. The tractor and the separator were on the extreme easterly side of the highway headed north. The plaintiff stopped the tractor immediately in front of the driveway with the apparent intention of going into the farm buildings to obtain shelter from the rain.

The defendant was driving an automobile north on the road in question. Some 500 feet south of the Wright driveway there is a hill. The defendant proceeded down this hill and, as he testified, observed the threshing machine and tractor standing in front of the Wright driveway. It was continuing to rain and the defendant was driving approximately 35 miles per hour on the right, or east side, of the highway with the double windshield wipers on his car operating.

He turned out to go around the threshing machine when he was 40 or 50 feet from the machine and apparently reduced his speed to 25 miles an hour. According to his testimony his view of the tractor unit was limited by reason of the position of the threshing machine and as he was passing the threshing machine he was between two and three feet from it. Just as he came even with the tractor the plaintiff, Stiefel, jumped or stepped off of the tractor and was struck by the defendant's car. There were three witnesses who detailed the circumstances of the accident. They were the plaintiff, the plaintiff's witness Kenneth Wright, and the defendant, Alvin Wandro.

The plaintiff's testimony as it relates to the accident is summarized as follows: "I stopped the tractor and threshing machine on the east side of the highway at the Wright gateway. * * * I was as close as I could possibly get without getting into the ditch. The ditch was about two feet deep. There was no space between the tractor and the ditch. * * * I was going to stop in this Wright place to get out of the rain. * * * Q. * * * after you stopped your outfit, tell the jury what you did and what

occurred. A. I stepped out onto this platform with the right leg and the left leg I had on the track and my hand was on the seat of the tractor. Then I looked back. * * * There was no one coming from my front. I did not see anything when I looked back. I could see as far back as the intersection. I did not see the Wandro automobile. After I looked back I stepped out on this track and placed both of my feet on the track then placed the right foot on this track and still hanging on the seat with my right hand. I was facing north, then I started to let myself down on the ground, stepped down to the ground. I did not get to the ground. The next thing I remember was that something hit me on my left leg. Then it threw me. Just before I was hit I imagine my left leg was about a foot outside of the track of the tractor. I stepped down. I was not jumping down. The next thing I remember I was on the ground. I am not sure where I was with reference to the front of the tractor on the highway. I was conscious. I observed where Wandro's car stopped after the accident. It was parked on most of the bridge with Mr. Wandro standing behind it when I saw it. * * * I later measured from the front of the tractor down to the place where I saw this car stop after it hit me. It was 375 feet. I do not know whether Mr. Wandro stopped his car before he got down there. Kenneth Wright and Kenneth Roethler came to help me. They were at the Wright farm. I did not hear any horn or signal just prior to when the accident took place. They lifted me into Kenneth Roethler's car. They couldn't get me into the seat because it was so painful. They left me on the bottom of the floor with Kenneth Roethler holding my shoulders while we went to town. I was partially sitting up in the car. I was not able to bend my injured leg. It gave me considerable pain. It hurt terrible. They took me to St. Joseph's Hospital. I remained conscious all the time. * * * I received an injury to my head at the time of the accident—just on the back of my head. * * * 1 think they put in two or three stitches to close the wound in the back of my head. * * * There was blood all over my shirt after the accident. * * * I was in the hospital for ninety-five days and had a cast on my leg and it came up on my hip as far as it could. It started at the bottom of my foot, just my

toes were sticking out. * * * After sixty days they took this cast off and put a new cast on with a walking iron under it. * * * I had this second cast on approximately nine months. Altogether I had the two casts on for approximately eleven months. When I left the hospital on December 14, 1951, I could get around on crutches. The leg at that time was giving me plenty of pain."

Kenneth Wright's testimony is in part as follows: "On September 10, 1951, I saw the accident involving George Stiefel and Alvin Wandro. I was standing in the driveway of the corncrib on our farm. This corncrib is just a trifle north of the driveway running into our farmyard and I would say about two hundred fifty feet west. * * * Kenneth Roethler and my father were with me, they were standing farther back in the corncrib. * * * While I was standing there I saw Mr. Stiefel approaching from the south. It was raining. * * * Stiefel was driving a caterpillar tractor, pulling a threshing machine. When he was directly in front of the driveway he started to get off. He looked back. He looked to the north first and then looked back, then he started to jump and as he was stopping the tractor I noticed this car coming over the hill to the south. It kept coming up closer to the separator and tractor. * * * He [Stiefel] jumped and the car came by and hit him. He hadn't quite hit the ground when the car hit him. I believe it hit him while he was in the air, the way it looked. It caught him with the bumper and grille and tossed him up over the front of the car and he broke the windshield so he evidently must have hit the windshield and it carried him about fifteen feet and rolled him over on the right side of the car. Mr. Stiefel landed just a little to the east of the center of the road. The Wandro car pulled to the right-hand side and went down the road. * * * It might have been seventy-five feet, it might have been a hundred feet. * * * I figured the speed of the Wandro car was about thirty-five or forty miles an hour when he came down the road and as he got to the machine he slowed down a little. * * * I didn't hear him sound any horn."

Inasmuch as it is the defendant's contention that the plaintiff was guilty of contributory negligence as a matter of law and that he jumped into the path of the car we shall further

set out a portion of the testimony of the witness Kenneth Wright as shown by the cross-examination: "He was standing on the side of the tractor just about the time Wandro turned out to go by. He 'kinda' bent over a little and looked back and then he looked to the north first, then he 'kinda' bent over a little to see back and he evidently couldn't see by the machine. * * * He jumped and just as he jumped the car was along the side. * * * He was in the air when he struck the car. He hadn't yet reached the ground. * * * It looked as though he was maybe a foot and a half off the ground at the time it hit him. I think he hit the front part of the Wandro car—front bumper, front fender."

Kenneth Roethler was a witness for the defendant. He did not see the accident. Immediately after he was told by Kenneth Wright what had happened he drove his car out to the roadway. He states George Stiefel was lying on the road about fifteen feet ahead of the tractor and that the Wandro car was stopped seventy-five feet north of the tractor and on the east side of the road.

Alvin Wandro was a witness in his own behalf. His testimony as it relates to the accident is summarized as follows: "When I was coming down the hill I was driving towards the east side of the highway and I was driving about thirty-five miles an hour. * * * when I was probably forty or fifty feet south of the threshing machine, I turned to the left to go by. * * * I slowed down when I was going by. * * * I would say I was about three feet, two and a half to three feet, west of the threshing unit as I passed. * * * I had slowed down when I turned out. I imagine when I was going by, I was travelling around twenty-five miles per hour. * * * When I was passing this unit it was raining. The first thing I heard something hit my car. I didn't know what happened and I stopped as soon as I could and went back and I saw him lying on the road. * * * When I was passing the threshing unit I would say I was around three feet to the left of it. I did not turn to the right any more before the accident occurred. After the impact I brought my car to a stop. I did not measure the exact distance but I would say I was around seventy-five or eighty feet to the

north of the tractor. * * * After the accident I observed that the lens on the front right light was broken and the chrome was marked up and the corner windshield on the right side of the car was broken. * * * I didn't see Mr. Stiefel before the impact with my car. I did not sound the horn on my car."

I.  One of the defendant's grounds for reversal is his claim the court erred in overruling the several motions which he filed during the trial wherein it was contended the plaintiff had failed to establish actionable negligence on the part of the defendant, and also because plaintiff's testimony showed he was guilty of contributory negligence as a matter of law. We do not propose to again set out the testimony of the witnesses to the accident but in considering this particular ground for reversal we are justified in referring briefly to some of the testimony. Plaintiff testified: "* * * After I looked back I stepped out on this track [a part of the tractor] and placed both of my feet on the track, then placed the right foot on this track and still hanging on the seat with my right hand. I was facing north then. I started to let myself down to the ground * * *. I did not get to the ground. * * * Just before I was hit I imagine my left leg was about a foot outside of the track of the tractor. * * *."

The defendant testified relative to his passing of the separator and the tractor as follows: "* * * I would say I was about three feet, two and a half to three feet, west of the threshing unit as I passed. * * *." Inasmuch as it is shown the tractor unit was 5 feet 9 inches in width and the separator was approximately 7 feet 4 inches in width there is a very definite variance in the testimony relative to where the plaintiff was when he was hit. If, as claimed by the defendant, his car was three feet west of the threshing unit when he passed it the jury could have found, if it saw fit to do so, that the defendant's automobile was approximately five feet west of the tractor as he passed it. It will be remembered the separator was approximately two feet wider than the tractor. However, the plaintiff testified he was still hanging onto the seat and one of his legs was only a foot away from the tractor when he was hit. It is claimed by the defendant that the testimony of Kenneth Wright is contradictory to the plaintiff's testimony. We do not believe

this to be correct. Wright did testify Stiefel jumped and the car came by and hit him but this witness also stated the plaintiff had not quite reached the ground when he was hit. Inasmuch as it is our duty to consider the plaintiff's testimony in its most favorable light in considering the sufficiency of the evidence we cannot see how the defendant, under the record, can maintain that the plaintiff was guilty of contributory negligence as a matter of law. Marts v. John, 240 Iowa 180, 183, 35 N.W.2d 844; Youngman v. Sloan, 225 Iowa 558, 560, 281 N.W. 130; Lukin v. Marvel, 219 Iowa 773, 782, 259 N.W. 782; Smith v. Spirek, 196 Iowa 1328, 1333, 195 N.W. 736.

The defendant maintains there was not sufficient evidence to hold him guilty of actionable negligence on the grounds pleaded by the plaintiff. In connection with this contention the following general rules of law should be kept in mind.

■ It was for the jury to say whether the defendant passed at a safe distance to the left of the tractor. Section 321.299, 1950 (1954) Code; Westman v. Bingham, 230 Iowa 1298, 1302, 300 N.W. 525; Sanford v. Nesbit, 234 Iowa 14, 16, 11 N.W.2d 695; Goodlove v. Logan, 219 Iowa 1380, 1385, 261 N.W. 496. It was also a question for the jury to say whether the defendant failed to have his car under control. Section 321.288, 1950 (1954) Code; Arenson v. Butterworth, 243 Iowa 880, 887, 54 N.W.2d 557; Rogers v. Jefferson, 226 Iowa 1047, 1051, 285 N.W. 701; Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 195, 196, 61 N.W.2d 696, 698. Under all the circumstances it was for the jury to say whether it was reasonably necessary in order to insure safe operation of the defendant's car that he sound his horn. Short v. Powell, 228 Iowa 333, 337, 291 N.W. 406. It is admitted that the defendant did not sound his horn just prior to or at the time that he was passing the separator and the tractor.

The case of Cunnien v. Superior Iron Works Co., 175 Wis. 172, 179, 184 N.W. 767, 769, 18 A. L. R. 667, 672, is a case of much similarity to the present one. There the plaintiff was alighting from a wagon when struck by an automobile. It was therein stated: "It would seem that whether or not the plaintiff was guilty of contributory negligence in doing what he did

at the time of the happening of the collision presented a situation which, like the negligence of the defendant Hayes, constituted a proper jury question."

Under all the circumstances disclosed in this case we are convinced the issues involved were properly submitted to the jury for determination. The defendant has referred us to numerous cases wherein we have held where the injured party left a place of safety and was injured by an approaching vehicle the plaintiff was guilty of contributory negligence as a matter of law. We have given these cases consideration but do not believe them applicable to the facts shown in the instant case.

II. Another ground for reversal is that the court was in error in submitting for the consideration of the jury the four specifications of negligence, to wit: the failure of the defendant to drive his automobile at a safe distance to the left of the tractor, the claimed failure of the defendant to have his automobile under control, the failure of the defendant to sound the horn of his automobile, and the defendant's failure to keep a proper lookout.

We have heretofore discussed the question whether there was presented a jury question in connection with most of the grounds previously stated. We have concluded there was sufficient evidence to justify the submission of these issues to the jury. The defendant has cited several cases where under the evidence a person or child darted out in front of a moving car. Such are not the facts in the present case. Then too, in connection with this brief point presented by the defendant it is contended an issue should not be submitted where the evidence does not disclose the claimed negligence was the proximate cause of the accident.

Ordinarily the question of proximate cause is for the jury. Coon v. Rieke, 232 Iowa 859, 865, 6 N.W.2d 309. And where there is substantial evidence of defendant's negligence and when different minds might reach different conclusions the question of proximate cause is for the jury. Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 371, 30 N.W.2d 120. We find no merit in this claimed error presented by the defendant.

■ III. The defendant claims as another ground for reversal the admission in evidence of a posed photograph purporting to be explanatory of plaintiff's testimony relative to his position as he was alighting from the tractor. In the case of State v. Ebelsheiser, 242 Iowa 49, 56, 43 N.W.2d 706, 711, 19 A. L. R.2d 865, 873, we commented upon the admissibility of posed photographs and held this court "* * * seems definitely committed to the rule of admissibility where proper foundation has been laid, * * *." We also there held the exhibit was only illustrative of the testimony of the witnesses and that while its value was probably small it was admissible. See also State v. DeZeler, 230 Minn. 39, 41 N.W.2d 313, 319, 15 A. L. R.2d 1137, 1147. In Dice v. Johnson, 198 Iowa 1093, 1099, 199 N.W. 346, where there was testimony the photograph was a true photograph of the surroundings the exhibit was held admissible. See annotation 27 A. L. R. 916. And in 19 A. L. R.2d 880 the annotator states: "The majority of cases appear to support the rule that posed photographs based on recollection as to the position of persons * * * are admissible as illustrative of the testimony of witnesses where a proper foundation therefor has been laid by preliminary testimony * * *."

In Ingebretsen v. Minneapolis & St. L. R. Co., 176 Iowa 74, 83, 155 N.W. 327, 330, we stated: "Whether photographs are to be admitted or excluded is a question very largely, if not entirely, in the discretion of the court, and this is more emphatically the case where, as we have said, they are intended to perform the office of an illustration or diagram in aid of oral or written testimony, rather than as being, in themselves, independent evidence."

We have given consideration to the record made at the time of and immediately prior to the offer of the exhibit in question. We hold preliminary qualification of it as relates to the plaintiff's position at the time he was alighting was made, and was illustrative of his testimony. We find no error on admitting the exhibit in evidence.

■ IV. It is the claim of the defendant the verdict against him of $18,500 was excessive. The evidence shows the plaintiff was in the hospital ninety-five days, he had a cast on his

left leg for eleven months, he was on crutches for a year or more, and for a period thereafter it was necessary for him to use a cane. The injuries to the plaintiff consisted of a fracture of the tibia and fibula. There was evidence plaintiff suffered considerable pain as he walked or endeavored to carry anything. There is further evidence that at the time of the accident the plaintiff suffered a great deal of pain and as a result of the accident received cuts on his head. The record shows that the plaintiff's earnings for the year 1950 and 1951 were approximately $2000. There was also a stipulation in the record his special damages for hospital and surgical services were $1200.95.

We have held that the comparison of recovery in various cases is not a satisfactory manner of determining whether a verdict in a particular case is excessive. De Toskey v. Ruan Transport Corp., 241 Iowa 45, 50, 40 N.W.2d 4, 17 A. L. R.2d 826. We do not propose to do so in this opinion. However, as bearing on the question whether passion and prejudice is shown in the present case we do refer to two of our recent cases. In Miller v. McCoy Truck Lines, Inc., 243 Iowa 483, 491, 52 N.W.2d 62, there was a claim that a verdict of $18,787 was excessive. In that case the special damages were shown to be $1216. It was also shown the plaintiff was hospitalized for twenty-eight days, he had a fracture of the sternum and of the manubrium. His right lung was injured and he also suffered numerous cuts and bruises which prevented him from working for approximately six months. We affirmed this case holding there was no evidence to indicate the verdict was based on passion and prejudice and that the amount of the verdict was a question for the jury to determine. In the case of Agans v. General Mills, Inc., 242 Iowa 978, 48 N.W.2d 242, there was a verdict for $18,000 and we held under the record it was not excessive. The plaintiff was twenty-eight years of age, suffered painful and permanent injuries including fractures of the femur, tibia and fibula and was hospitalized for sixty-six days. The hospital and medical expense was $1407.05. In that case this court held there was no evidence of passion and prejudice shown and the verdict should stand.

In the instant case we likewise find no evidence of passion and prejudice which would justify us in holding that the verdict was excessive because of that fact. It is only when it is affirmatively shown that passion and prejudice existed and the excessiveness or inadequacy is such as to shock the conscience that this court should interfere. De Toskey v. Ruan Transport Corp., supra, 241 Iowa, at page 49, 40 N.W.2d, at page 7.

V. In the submission of two of its instructions the trial court made reference to items of damages claimed by the plaintiff in his petition. Subsequent to the filing of this initial pleading, interrogatories asked by the defendant were answered by the plaintiff. Rules 121, 128, R. C. P. The defendant now claims as a reversible error the failure of the court in its instructions relative to damage (1) to give consideration to interrogatories even though they were not introduced in evidence by the defendant, (2) the giving of an instruction on loss of earnings wherein the answers to the interrogatories are not considered, (3) the giving of an instruction on future pain and suffering not based on the answers to the interrogatories, and (4) the itemizing of special damages and the deducting of this amount from the total amount claimed.

Rule 121 provides the answering of interrogatories may be required: "* * * if they are necessary to enable the interrogating party adequately to prepare for trial. * * *." Rule 128 provides: "The answers to interrogatories, whether contained in the written answers or as secured by oral examination or by deposition may be used only as follows: (1) To contradict or impeach the testimony of the interrogated party as a witness. (2) As admissions of the interrogated party. If only part of the interrogatories and answers are offered in evidence by a party, any other party may introduce all or any part of the interrogatories and answers which explain or are relevant to the part introduced. A party does not, by introducing such answers, make the interrogated party his own witness."

It will be observed rules 121 and 128 have limited the manner or purpose for which answers may be required and used. It is apparent these two rules limited the purpose of the interrogatories to aiding the adversary to prepare for trial (Ad-

visory Committee Comment, Cook's Iowa Rules of Civil Procedure, Volume 2, page 13) and for the limited purpose set forth in rule 128, when offered in evidence.

■ The interrogatories and the answers were not introduced in evidence for any purpose and we cannot see how they can be the basis for any claimed error on the ground the facts therein set forth were not incorporated in the instructions. They are in no degree pleadings and their use is limited to the purposes set forth in the applicable rules.

As interpretive of rule 121 see Myers v. Stratmann, 245 Iowa 1060, 65 N.W.2d 356, also Hitchcock v. Ginsberg, 240 Iowa 678, 37 N.W.2d 302; Nehring v. Smith, 243 Iowa 225, 49 N.W.2d 831.

■ VI. Complaint is made because the court failed to make mention after each reference relative to specific claimed grounds of negligence that it must find such negligence was the proximate cause of the injuries. In one of the instructions submitted the court fully advised the jury on the question of proximate cause. We hold this was sufficient. The instructions must be considered as a whole and in particular does this apply relative to the question of proximate cause. Duncan v. Rhomberg, 212 Iowa 389, 401, 236 N.W. 638. There was no necessity to state after each reference to the claimed grounds of defendant's negligence that the jury must find such ground was the proximate cause of plaintiff's injury.

■ ■ VII. Error is also claimed because the court included the statement the jury could consider the question of the alleged intoxication of the defendant in connection with the plaintiff's specifications of negligence relative to the defendant having his car under control and his claimed failure to keep a proper lookout. We believe there was sufficient competent evidence to justify the instruction given. In Smith v. Pine, 234 Iowa 256, 266, 12 N.W.2d 236, 242, we said: "Evidence that plaintiff was under the influence of liquor or had been drinking was doubtless admissible as bearing on the care he exercised. State v. Graff, 228 Iowa 159, 174, 290 N.W. 97." In substance the submitted instruction made the same statement. We find no error in the instruction of which complaint is made. It was jus-

tified under the record. See Lubliner v. Ruge, 21 Wash.2d 881, 153 P.2d 694.

VIII. Defendant has submitted as claimed errors and as grounds for reversal the giving of certain instructions and the failure to give others asked by the defendant. Although there are several grounds of claimed error we shall endeavor to limit our comments thereon as the situation permits.

In the first place, the defendant complains because the court withdrew from the consideration of the jury and failed to instruct relative to defendant's claim that the plaintiff was negligent in failing to observe the automobile operated by the defendant, in failing to use proper care in alighting from the tractor, and in crossing the highway in front of the approaching traffic, all as bearing upon plaintiff's contributory negligence.

We have considered the court's instructions and find it adequately instructed on the question of contributory negligence and there is no basis for the complaint made. Although the court in its Instruction No. 14 did not exclusively refer to the plaintiff's necessity to keep a proper lookout it did say: "* * * it is for you to determine from all the facts and circumstances disclosed by the evidence whether a proper lookout was maintained by the plaintiff and by the defendant." And in Instruction No. 15 particular reference is made to the defendant's claim the plaintiff was guilty of contributory negligence in alighting from the tractor. Defendant also complains because no reference is made to the claimed negligence of the plaintiff in crossing the highway. As is shown by the record heretofore set out it is apparent there was no evidence presented that would justify the court in submitting this issue as a part of the plaintiff's claimed contributory negligence.

In the defendant's exception to the instruction no complaint is made relative to the issue of crossing the highway. As stated in Stupka v. Scheidel, 244 Iowa 442, 450, 56 N.W.2d 874, 878, 879, "Further, rule 196 provides objections must be made to the 'instructions in their final form' if they are to be considered on appeal. In re Will of Soderland, 239 Iowa 569, 583, 30 N.W.2d 128, 136." We find no basis for reversal on these claimed errors.

822

IX. There are several other claimed errors specifically commented on in defendant's brief and argument. Inasmuch as the questions therein raised have been referred to in prior divisions of this opinion and our statements therein are determinative of these later claimed errors we shall not discuss them further.

We find no basis for reversal and the trial court is affirmed. —Affirmed.

All JUSTICES concur.