STATE OF IOWA, appellee, v. DAVID JOSEPH SCHMIDT, appellant.

No. 52170.

974

Paul D. Lunde, of Ames, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett and David A. Elderkin, Assistant Attorneys General, and Charles E. Vanderbur, Story County Attorney, for appellee.

MOORE, J.—October 15, 1965, defendant, David Joseph Schmidt, was charged by county attorney information in Story County with the crime of assault with intent to inflict great bodily injury in violation of section 694.6, Code 1962, to which he entered a plea of not guilty. On trial of the cause the jury returned a verdict of guilty. On January 17, 1966, defendant was sentenced to the Men's Reformatory at Anamosa for one year. From this judgment and sentence he has appealed. We affirm.

Appellant contends the trial court erred in: (1) Ruling the evidence established a jury question on the essential element of specific intent to inflict great bodily injury, (2) overruling defendant's motion for a directed verdict, (3) overruling his objection to evidence of State's witness Nath, (4) failing to give instructions requested by him, (5) giving instruction to which he claims he objected and (6) allowing the county attorney to make improper statements during his rebuttal argument. Defendant's court-appointed attorney also asserts the trial court erred in failing to allow a reasonable attorney fee on his application filed and ruled on many weeks after the appeal was taken.

At the close of the State's case in chief defendant made a motion for a directed verdict on the ground a jury question

had not been established on the essential elements of the crime charged. The main thrust of his motion was a claimed lack of evidence of a specific intent to inflict great bodily injury.

After defendant's motion for a directed verdict was overruled he elected not to offer any evidence. His motion was not renewed. We shall consider his motion as made at the close of the record. In doing so we take the evidence in its most favorable light to the State.

The following is a reasonable summary of the State's evidence. Each witness was vigorously and thoroughly cross-examined.

About 1:45 a.m. September 8, 1965, Walter L. Johnston, an Ames policeman assigned to patrol downtown Ames while visiting with merchant policeman Edward E. Allen, heard loud talking from behind the Maidrite which he immediately investigated. He there found defendant and Jerome Matuseski arguing and preparing to fight. Both were unknown to the officer. Johnston told them they were being pretty loud, they had a little too much to drink, they better break it up or they could be taken in for intoxication and asked them to go home.

One of the two men replied they were going to Dave's Lounge, located nearby. Defendant then came nearer the squad car and said: "Don't sweat this none, we are going. Don't worry about it." After some urging by Matuseski defendant left and the two men walked toward the lounge. They went by that establishment and entered an alley.

Being aware there had been recent unsolved breakins in the area Johnston drove around and into the alley where he found only defendant and asked him for his driver's license. Defendant informed the officer he had no driver's license and when asked where his "buddy" was said, "what buddy? I don't have a buddy". The officer then requested defendant to enter the police car and when it became apparent he was not going to do so, the officer made a radio call for assistance. About this time Matuseski appeared. As the officer was replacing the radio microphone he was struck by defendant on or near his left temple. The officer assumed defendant had struck him with his fist. Johnston was at least momentarily rendered unconscious.

He was not aware of any further use of the radio. Other witnesses heard him call "help" three times on the radio.

After regaining his consciousness or composure Johnston got out of the squad car and found defendant some distance away crouched in an alley with his hand on a pop bottle. Johnston after pulling his gun took defendant into custody.

Upon hearing Johnston's call for help, Sergeant Ball and officer Paul of the Ames police department and the merchant policeman in separate vehicles went to the scene where they found defendant in Johnston's custody. Defendant called them profane names and challenged them all to physical combat.

When Sergeant Ball approached, defendant's first words were "Get it started you s-o-b, start swinging". When Ball told defendant Johnston was a new young officer Schmidt said: "To hell with him then, he can't prove it." Defendant was then taken to the Ames jail where one of his cellmates was Bruce Allen Nath.

On cross-examination Ball testified he had arrested defendant on prior occasions, including an arrest for operating a motor vehicle while intoxicated and malicious injury to a building, he had been struck by defendant and another officer suffered pulled ligaments and separated ribs when defendant fought the officer. At the scene defendant informed Ball he hated his "guts".

Nath testified defendant was loud and boisterous in the jail and referred to all policemen as chicken—and punks. Nath testified defendant said: "I really showed them cops tonight. Man, I powed him. Man, I really smashed him, I really got him good."

Immediately after the blow Johnston was stunned, confused and apparently momentarily unconscious. On the way to the police station he complained of his head hurting and his eyes would not focus. His head was swollen and red. His ears rang. About 9 that morning he saw a doctor, X rays were taken and his condition diagnosed as a contusion on the left side of his head and a mild concussion. He felt sick the next day and took pills for his headache which persisted for approximately two and a half months. He was off work six days. His injury was

not permanent and apparently he had no residual effects from the blow.

I. Defendant's first two assignments of error challenge the sufficiency of the evidence to justify his conviction of the charge of assault with intent to inflict great bodily injury. His argument the evidence is insufficient to establish he struck the blow merits little comment. The officer's testimony and defendant's statements clearly make this a question for the jury.

The crime charged here is not susceptible of exact definition. It is also difficult to define with exactness or definite limitations just what a great bodily injury is. We have said at different times it is an injury to the person of a more grave and serious character than an ordinary battery but it cannot be definitely defined. The gist of the offense is the intent, which is seldom capable of direct proof and ordinarily is disclosed by all the circumstances attending the assault, together with all relevant facts and circumstances as disclosed by the evidence. The extent of the injury, if any, although not in itself determinative of the intent, may be considered as bearing thereon. State v. Gillett, 56 Iowa 459, 9 N.W. 362; State v. Ockij, 165 Iowa 237, 145 N.W. 486; State v. Dickson, 200 Iowa 17, 202 N.W. 225; State v. Grimm, 206 Iowa 1178, 221 N.W. 804; State v. Crandall, 227 Iowa 311, 288 N.W. 85; State v. Van, 232 Iowa 34, 2 N.W.2d 748; State v. Sommer, 249 Iowa 160, 86 N.W.2d 115. In the Gillett, Ockij, Crandall and Van cases we refer to the well-established principle that a person is presumed to have intended the natural result of his intentional act.

With these principles in mind our review of the record leads us to conclude it was for the jury to say whether the defendant had the essential intent which is the gist of the crime charged. In the Dickson, Grimm, Crandall and Van cases we affirmed convictions of assault with intent to inflict great bodily injury where defendants used only fists.

II. Defendant's third assignment of error is difficult to understand. His only objection to the testimony of Nath, defendant's cellmate, when offered was that it was hearsay. The trial court correctly overruled this objection. Nath was only asked to relate the statements voluntarily made to him by

defendant. They were admissions against interest and tended to establish material facts in the case. As such they were admissible. 31A C. J. S., Evidence, section 272; 20 Am. Jur., Evidence, section 544; McCormick on Evidence, sections 241, 246; Jones on Evidence, Fifth Ed., sections 334, 398.

Defendant's counsel for the first time asserts in his brief that allowing Nath's testimony resulted in denial of a fair trial. He argues the trial court should have attempted to ascertain whether Nath had any knowledge of the facts in the case. No such request was made to the trial court. The record discloses Nath only stated what defendant had said and done soon after his arrest. Defendant's third assignment of error is without merit.

III. A study of the record leads us to conclude defendant's fourth and fifth assignments of error must be considered together. After both sides rested the record discloses "the Court provided counsel with a rough draft of the proposed instructions." Thereafter an in chambers discussion was held. There was no statement or stipulation indicating it was anything other than rough draft procedure. The proposed instructions prepared by the court were not all numbered.

During this discussion both counsel expressed a desire an intoxication instruction which was included in the rough draft be not given to which the trial court agreed. Defendant's attorney objected to the inclusion of two included offenses, assault and battery and simple assault as he felt only simple assault was raised by the evidence. The trial court expressed disagreement with this proposal. Defendant's counsel also objected to other proposed instructions and asked that other instructions which he requested be given in lieu thereof. As to one proposed or requested instruction by defendant the trial court expressed the thought it might be given and ordered it written up.

The abstract of the record as well as the clerk's transcript fails to disclose defendant filed any written requested instructions nor did he at anytime either before the final draft of the instructions were read and submitted to the jury or after the verdict make any objections to the instructions in their final

form. Other than the rough draft discussion defendant took no exceptions to the court's failure to give instructions in the form suggested during the discussion. The substance of most of them was included in the court's final draft of the instructions.

Section 780.35, Code 1962, provides: "Instructions. The rules relating to the instruction of juries in civil cases shall be applicable to the trial of criminal prosecutions."

Rule 196, Rules of Civil Procedure, as pertinent here, provides: "Instructions. The court shall instruct the jury as to the law applicable to all material issues in the case and such instructions shall be in writing, in consecutively numbered paragraphs, and shall be read to the jury without comment or explanation; * * *. At the close of the evidence, or such prior time as the court may reasonably fix, any party may file written requests that the jury be instructed as set forth in such requests. Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal. * * *."

Defendant failed to comply with the plain provisions of rule 196. He failed to file written requested instructions. He failed to object to any instruction in the final draft or the court's failure to give any of his requested instructions if it is assumed they were properly presented.

■ Objections, in the absence of agreement of counsel otherwise, must be made to the instructions in their final form if they are to be considered on appeal. Rule 196. They must be in writing or dictated into the record. Objections or exceptions to the preliminary draft of instructions are not sufficient to sup-

port an assignment of error upon appeal. In re Will of Soderland, 239 Iowa 569, 30 N.W.2d 128; Stupka v. Scheidel, 244 Iowa 442, 56 N.W.2d 874; Stiefel v. Wandro, 246 Iowa 807, 68 N.W.2d 53.

This being a criminal case defendant could have attacked the instructions as given by the court in a motion for new trial. Section 787.3(5); State v. Holder, 237 Iowa 72, 20 N.W.2d 909; State v. Linzmeyer, 248 Iowa 31, 79 N.W.2d 206; State v. Post, 255 Iowa 573, 123 N.W.2d 11. No motion for new trial was filed.

In this state of the record the instructions are not subject to review here on defendant's assignments of error four and five. State v. Griffin, 218 Iowa 1301, 254 N.W. 841; State v. Boston, 233 Iowa 1249, 11 N.W.2d 407; State v. Ryerson, 247 Iowa 385, 73 N.W.2d 757, 55 A. L. R.2d 1190; State v. Rasmus, 249 Iowa 1084, 90 N.W.2d 429.

We have, however, carefully read the instructions given and find no reason to hold defendant did not receive a fair trial.

IV. Defendant argues the trial court erred in permitting the county attorney during rebuttal argument to make improper statements. The only objection made by defense counsel was to this statement by the prosecutor: "I do ask you, if you really think Schmidt did not strike the blow, find him not guilty. If you really think he didn't intend to do the injury for Heaven's sake find him not guilty. But if you believe, as I do, he did strike—"

Defense counsel objected, saying: "It isn't proper for the county attorney to state his personal belief as to the guilt of the defendant."

The court said: "He hasn't expressed it yet. Your objection is not good, Mr. Lunde."

Defense counsel made no further record thereafter. His claim defendant did not receive a fair trial because of the county attorney's conduct is without merit.

Assuming arguendo the prosecutor was guilty of some misconduct, it must be kept in mind that mere misconduct of counsel is not in itself sufficient to require a reversal of a judgment of conviction in a criminal case. The misconduct must

have operated to the harm of defendant; that is, to deny him a fair trial. The question should have been brought to the trial court's attention if defense counsel wanted to properly raise the issue of want of fair trial. The trial court occupies a position of vantage and is rightly given considerable discretion in determining whether prejudice has resulted in event of misconduct of the prosecutor. State v. Jensen, 245 Iowa 1363, 1368, 66 N.W. 2d 480, 482, and citations.

In instruction 14 the trial court told the jury:

"In passing upon the issues in this case you should be governed solely by the evidence and these instructions. You should not consider any statements of counsel not supported by the evidence, nor should you consider any evidence that has been offered and refused or stricken on motion, or withdrawn from your consideration by the court.

"You should not allow yourselves to be swayed by sympathy, passion or prejudice, but let your verdict be the result of a fair, dispassionate consideration of the testimony in the case, and the instructions given you by the court."

Our search of the record and the clerk's transcript leads us to conclude defendant was given a fair trial.

V. Defendant's notice of appeal given January 17, 1966, addressed to the proper parties is as follows:

"You and each of you are hereby notified that the defendant, David Joseph Schmidt, has appealed, and does hereby appeal, to the Supreme Court of Iowa from the final judgment of said District Court of Iowa, in and for Story County, rendered and entered of record in the above entitled case against the defendant, David Joseph Schmidt, on or about the 17th day of January, 1966, whereby said defendant was adjudged to be guilty of the crime of assault with intent to do great bodily harm and from the sentence of the said court entered thereon.

"And also from any and all adverse orders, rulings, and decisions of said court at anytime prior thereto made in said case and during the progress, pendency and trial thereof, and that said case will come on for hearing and disposition in said Supreme Court of Iowa in accordance with the Rules of said Court in its regular order."

On March 23, 1966, defendant's attorney, Paul D. Lunde, filed a 16-page verified application for counsel fees to February 9, 1966, including services rendered in Schmidt v. Uhlenhopp, 258 Iowa 771, 140 N.W.2d 118. He claimed $3812.50 as fees plus $141.03 expenses.

Section 775.5, Code 1962, as amended by chapter 449, Laws of the Sixty-first General Assembly, provides an attorney appointed by the court to defend any person charged with a crime shall be entitled to reasonable compensation to be decided in each case by the court. It also authorizes allowance of a sum or sums as the court may determine are necessary for investigation in the interests of justice and costs necessary for a transcript and printing in event of appeal.

Defense counsel's claim was submitted on his application as filed. On April 21, 1966, the trial court entered a written ruling on the application finding a reasonable attorney fee to be $950 and ordered the county auditor of Story County to pay Mr. Lunde that amount plus $141.03 as necessary expenses.

Defendant's counsel has attempted in this case to appeal from that allowance and order. Neither he nor Story County is a party herein. His claim the trial court erred in the amount allowed does not go to an affirmance or reversal of defendant's conviction. The order was not adverse to defendant. It is an attempt to appeal by the attorney who is not a party herein. This cannot be done. Garberson v. Garberson, 241 Iowa 713, 714, 42 N.W.2d 391, 392 and citations; State v. Lundstedt, 246 Iowa 355, 67 N.W.2d 450. Defense counsel's contention is not properly before us.

We find no reversible error. Upon the whole record, we feel defendant had a fair trial.—Affirmed.

All JUSTICES concur except BECKER, J., who dissents.