Carl Raymond ANDERSON and Mary Ann Anderson, Appellants,

v.

James WILCOX, Appellee.

No. 54549.

Supreme Court of Iowa.

Sept. 9, 1971.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellants.

Hopkins, Bump & Huebner, Des Moines, for appellee.

BECKER, Justice.

Action at law for damages for personal injury sustained as a result of a collision between a motorcycle operated by plaintiff Carl Raymond Anderson and pickup truck driven by defendant. The issues of defendant's negligence and plaintiff's contributory negligence were submitted to a jury. Verdict was for defendant. Plaintiffs' motion for a new trial was overruled. Plaintiffs appeal. Reversed and remanded.

Plaintiff Mary Ann Anderson sues for loss of consortium. The term plaintiff will hereafter be used to refer to Carl Raymond Anderson, the injured party. Plaintiff and defendant were employees of AMF Western Tool Company. The collision occurred in the company parking lot shortly after 3:30 P.M., May 30, 1969. Defendant was backing his pickup-camper out of an angle parking space into the exit lane which is 10 to 20 feet wide. Plaintiff was traveling west in the exit lane on a motorcycle. Defendant's pickup was facing northwest as it was being backed out of the angle parking. Plaintiff's motorcycle was traveling west as it approached the rear of the truck.

Plaintiff testified he was moving approximately five m.p.h. He first saw defendant's truck when he was about five feet from it. The truck was then one-half to three-quarters into the lane. The plain-

tiff also said he was traveling two to three feet from the cars parked to his right to avoid oil drippings in the middle of the lane. When plaintiff first saw defendant he hollered "whoa" in a loud voice, attempted to swerve to the left but was struck by the left portion of defendant's rear bumper on his right side.

Berthel Shank was operating a motorcycle 10 to 15 feet ahead of plaintiff. He had to swerve to avoid defendant's backward motion. Shank stated that he heard the plaintiff "holler" before the collision.

The defendant testified he looked in the rear vision mirror before backing up. He neither saw the plaintiff nor heard him yell before the collision. In cross-examination he said:

"I had driven this camper quite a number of times before, and the only way you could see would be if you looked in my mirrors and I could see directly behind me, so I knew that I had a vision problem with this truck. There were blind spots on it. I knew that when I got the truck. In one smooth motion I backed out."

The defendant stated he saw Shank through a mirror located on the right side of his truck, stopped, and then heard a "thud".

At the close of all the evidence defendant sought and obtained permission to amend his answer to allege contributory negligence for failure "to sound his horn when sounding his horn was reasonably necessary to insure the safe operation of his vehicle and to warn the defendant of the plaintiff's approach." Defendant stated the specification was based on section 321.432, Code, 1966.

■ I. Plaintiff's first assignment of error deals with the instruction concerning the "sounding of the horn" specification. In pertinent part the instruction reads:

"If you find from a preponderance of the evidence that at said time and place plaintiff Carl Raymond Anderson observed the backward movement of defendant's motor vehicle in time to have sounded the horn on said plaintiff's motorcycle to warn defendant of said plaintiff's approach, and you further find that an ordinarily reasonable and prudent person under the same or similar circumstances would have sounded the horn on said motorcycle and you further find that at said time and place plaintiff Carl Raymond Anderson failed to use ordinary care to sound the horn on his motorcycle, such failure, if any, would constitute negligence on the part of said plaintiff."

The objection, made after argument to the jury, when the instructions in their final form were submitted reads:

"Come now the plaintiffs and object to Instruction No. 12 wherein the Court instructs the jury with regard to failure by the plaintiff Carl Anderson regarding sounding of a horn warning of the plaintiff's approach. It would be the plaintiff's position that under the common law this instruction is too narrow; that the instruction should have allowed for any type of warning, whether it be by horn or by voice or in any other manner; that if in fact a warning was given, the jury should determine the sufficiency of that warning and not be limited to the approach that the instruction has here only as to the horn; * * *."

In Instruction No. 6 the court told the jury the statutory rules of the road do not apply to this case because the incident occurred entirely on a private parking lot. Section 321, Code, 1971. Neither side challenges this instruction. Defendant contends there is a common-law duty to sound the horn. Plaintiff claims, and properly advised the court, that the common-law duty is to give an audible warning by sounding a horn or *by otherwise giving a timely signal of his approach.* This is the first fighting issue in the case.

Lawson v. Fordyce, 237 Iowa 28, 64, 65, 21 N.W.2d 69 (1945) states:

" 'Apart from specific legislative provision, a duty rests upon the operator of a motor vehicle to slow down and sound his horn *or otherwise give timely signal of his approach* when danger would otherwise be incurred. This obligation is included in the common law duty to use reasonable care.' See, also, Shifman v. Whalen, 234 N.Y. 283, 137 N.E. 331; Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S.W.2d 615.

" 'Even in the absence of a statute or ordinance specifically requiring a warning, a motorist nevertheless should give warning to avoid possible danger to pedestrians if the exercise of reasonable care should so require.' 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm Ed., § 1251.

"In 3 Berry, Law of Automobiles, 7th Ed., § 3.152, the author states:

" 'Reasonable care may require that a motorist give a pedestrian warning though no statute imposes the duty.' " (Emphasis added.)

Nichols v. Snyder, 247 Iowa 1302, 1307, 78 N.W.2d 836, 839 (1956), is to like effect. We there quoted 60 C.J.S. Motor Vehicles § 288, pp. 674, 675:

" 'In the absence of statutory or other governmental regulation imposing a mandatory duty to do so, the duty to blow a horn or *give other warning signal* of the approach of a motor vehicle depends largely on the circumstances * * *. It is the duty of the driver to give warning of the approach of the vehicle when this is *reasonably necessary* to avoid danger or injury to others by according them an opportunity to take measures for their own protection * * *.' (Emphasis supplied)." (First emphasis supplied).

Since the statutory law of the road does not apply here, section 321, Code, 1971, the above common-law principles adopted by this court apply. Under this factual situation we find the instruction defining plaintiff's duty to warn defendant of his approach was, as plaintiff contends, too narrow.

Although the vehicles were traveling slowly the situation developed rapidly. An eyewitness, Gary Collins, testified:

"MR. KOEHN: How much time would you estimate elapsed from the time that you first saw Mr. Anderson, as you have said about fifteen feet away when Mr. Wilcox's vehicle was starting to come out, and the time that he started to make his left hand turn?

"MR. COLLINS: Well, you had two motions there; I mean one going one way and one going the other way coming together. Just a very slight second."

Berthel Shank, who was driving a motorcycle immediately ahead and to the left of plaintiff, testified:

"* * * Mr. Anderson was going about the same speed because he was right behind me. I was going along there and all of a sudden there it was (Mr. Wilcox's truck) coming out, and I swerved over and just barely did miss him. I was up reasonably close to where he backed out and he came right out into the line of traffic there, backed right out. I couldn't say the speed he was going, but then he was backing out as if he thought everything was clear I presume, because he just backed right out. He didn't come gunning it right out of there or anything like that, but he did just back right out like he knew it was clear. He just backed right out, swung out. I was traveling in the southern lane and I was just barely able to avoid him. I didn't see any brake lights of any kind on his vehicle. I didn't hear any horn or any warning of any kind. Carl hollered and I just looked back over my shoulder when I heard him holler. I don't know what he said, he just hollered. * * *.

"Oh, gees, that's like that (indicating by snapping fingers). I mean, it was quick. It was such a short distance, I mean, he was right there, we were right there."

With this evidence in the record plaintiff maintains the instruction should have included the concept "or otherwise give timely signal of his approach". He contends the jury could have found under this record that timely signal other than sounding the horn was in fact given but the instruction was prejudicially silent as to the latter element.

Robeson v. Dilts, 170 N.W.2d 408, 415 (Iowa 1969), states:

"In McCoy v. Miller, 257 Iowa 1151, 1154, 136 N.W.2d 332, 333, we said, 'It is well settled that instructions should be adapted to the record and that merely quoting the statute without relating it to the issues is insufficient.' To the same effect see Jakeway v. Allen, 226 Iowa 13, 17, 282 N.W. 374."

Here the instruction did not set out the common-law doctrine heretofore recognized by the court nor was it properly adapted to the record. We hold failure to state the entire common-law rule in relation to duty to give warning by sounding the horn or give other audible warning was, under the circumstances shown here, reversible error.

■■ II. Since this case must be remanded for new trial we consider plaintiff's second assigned error. Plaintiff contends an instruction on sudden emergency should have been given and this was especially necessary when plaintiff's failure to sound horn became an issue in the case. We agree but this claimed error is not available as a ground for reversal because of failure to make a proper trial record.

At the informal presentation of the instructions to counsel before final argument, the following colloquy occurred:

"MR. KOEHN: I think there is a matter of sudden emergency in this case, Your Honor. In fact, there is two different situations. Whether the defendant had an opportunity to sound his horn before he backed out and whether suddenly confronted with an emergency in front of him the plaintiff had an opportunity to sound his horn * * * certainly provides the situation of sudden emergency.

"We will certainly request that instruction.

"THE COURT: You can request it, but it will not be granted.

"All right. Does anybody want to make any other record?"

However, when the instructions in their final form were presented to counsel after final argument in conformance with rule 196, Rules of Civil Procedure, plaintiff's counsel failed to request an instruction on sudden emergency and failed to object to the instructions for failure to give such an instruction. The latter action, if timely taken, would have been sufficient. Vint v. Ashland, 258 Iowa 591, 600, 139 N.W.2d 457, 463 (1966).

Even though the trial court had been alerted to the claimed need for such an instruction, rule 196 requires a record made at the time of final submission of instructions. Otherwise the error is not preserved. The necessity for making the record in compliance with rule 196 is very clear from our statement in State v. Schmidt, 259 Iowa 972, 979, 145 N.W.2d 631, 636, where we said:

"Objections, in the absence of agreement of counsel otherwise, must be made to the instructions in their final form if they are to be considered on appeal. Rule 196. They must be in writing or dictated into the record. Objections or exceptions to the preliminary draft of instructions are not sufficient to support an assignment of error upon appeal. In

re Will of Soderland, 239 Iowa 569, 30 N.W.2d 128; Stupka v. Scheidel, 244 Iowa 442, 56 N.W.2d 874; Stiefel v. Wandro, 246 Iowa 807, 68 N.W.2d 53."

Rule 196 applies to both civil and criminal cases. The effect of section 787.3(5) applies only to criminal cases. State v. Schmidt, supra; State v. Gilmore, 181 N.W.2d 145, 146 (Iowa 1971). Cf. Rule 196 at 3 Iowa Rules of Civil Procedure, Annotated, p. 70.

Despite the peremptory ruling of the court telling counsel a sudden emergency instruction would not be given, it is nevertheless the duty of counsel to make a further record as required by rule. Therefore this assignment cannot be a predicate for error. Since the case is to be retried, we decide the issue as it affects retrial. We need not repeat the evidentiary matters heretofore set forth. Sudden emergency need not be pled to be a submissible issue. Baker v. Wolfe, 164 N.W.2d 835, 839 (Iowa 1969). The rules in relation to sudden emergency are set forth in Yost v. Miner, 163 N.W.2d 557 (Iowa 1968). We hold sudden emergency should have been the subject of a proper instruction.

For the reasons set forth in Division I, a new trial should have been granted.—Reversed and remanded.

All Justices concur, except MOORE, C. J., and LeGRAND, J., who dissent.

MOORE, Chief Justice (dissenting).

I dissent.

Plaintiff, Carl Raymond Anderson, had worked at the Western Tool Company for more than two years. He was well aware of the large parking facilities furnished the employees. Motorcycles were parked near the plant building at the east end of the parking lot. Defendant, a foreman, was assigned a regular parking space approximately 75 feet west of plaintiff's space. Plaintiff knew defendant's vehicle and that it was regularly parked in a long line with other employees' vehicles and that backing out was necessary to get in position to leave the lot at the end of the working day.

Like other day shift employees plaintiff "punched out" at 3:30 p. m., May 30, 1969 and went to his motorcycle. Some other employees were then leaving the parking lot. Plaintiff mounted his Honda, a small motorcycle, and proceeded west in a path about two feet back of the line of parked vehicles. He testified he increased his speed from five to eight miles per hour and "I couldn't have been going much over eight miles an hour because it wouldn't run that fast in low."

Plaintiff further testified he was about five feet from defendant's vehicle when he first saw it three-fourths out in his lane. He stated: "When I was about five feet away, I hollered 'Whoa'. I think I hollered pretty loud." Plaintiff stated he at no time sounded the horn of his motorcycle.

Plaintiff's testimony includes: "I do know that a motorcycle and a motorcyclist is more difficult to see, and I am supposed to operate my cycle on the assumption that I am more difficult to see. I am supposed to take that into account."

Defendant testified he heard no warning but did not deny or attempt to show plaintiff had not hollered, "Whoa". Apparently it was defendant's theory a reasonable prudent person under the circumstances would have sounded a horn while proceeding westerly two feet behind the line of parked vehicles. At the close of the testimony defendant was permitted to add this specification of negligence to his answer: "In failing to give a warning signal of his approach by means of his horn when he knew or should have known that such warning was necessary under the circumstances to insure the safe operation of his motorcycle."

The trial court's instruction 12, which plaintiff asserts was erroneous, stated:

"Defendant alleges that at the time and place involved herein, plaintiff Carl Raymond Anderson was negligent in failing to sound his horn to warn defendant of said plaintiff's approach.

"It was the duty of said plaintiff at said time and place to take such precautions in the operation of his motorcycle as an ordinarily reasonable and prudent person would have taken under the same or similar circumstances.

"If you find from a preponderance of the evidence that at said time and place plaintiff Carl Raymond Anderson observed the backward movement of defendant's motor vehicle in time to have sounded the horn on said plaintiff's motorcycle to warn defendant of said plaintiff's approach, and you further find that an ordinarily reasonable and prudent person under the same or similar circumstances would have sounded the horn on said motorcycle, and you further find that at said time and place plaintiff Carl Raymond Anderson failed to use ordinary care to sound the horn on his motorcycle, such failure, if any, would constitute negligence on the part of said plaintiff."

I. A pleader is entitled to claim as many grounds of actionable negligence as flow from his pleaded statement of facts. Rosin v. Northwestern States P. Cem. Co., 252 Iowa 564, 568, 107 N.W.2d 559, 561; Sutton v. Moreland, 214 Iowa 337, 342, 242 N.W. 75, 78. And the party is entitled to have the court instruct the jury accordingly, subject only to the condition legally sufficient evidence was in fact presented. Anthes v. Anthes, 258 Iowa 260, 265, 139 N.W.2d 201, 205.

II. As pointed out by the majority opinion the accident involved occurred on private property and therefore we are not considering statutory laws of the road. We are considering the common law duty to use reasonable care.

Instruction 12 did not advise the jury plaintiff was negligent if he failed to sound his motorcycle horn. It advised the jury they could find plaintiff guilty of negligence in this regard only if an ordinarily reasonable and prudent person under the same or similar circumstances would have sounded the horn. Under the instruction the jury was free to find that since plaintiff had shouted "Whoa", ordinary care did not require the additional blowing of the horn. I find no error in giving instruction 12. In my opinion the trial court gave plaintiff more than he was entitled to in requiring the jury to first find he observed the backward movement of defendant's vehicle in time to sound a horn.

III. I agree with the majority that plaintiff failed to conform with rule 196, Rules of Civil Procedure, and that his second assigned error is not properly before this court. I would not reach or discuss the problem of whether plaintiff was faced with a sudden emergency not of his own making.

I would affirm.

LeGRAND, J., joins in this dissent.